In the Matter of JOSEPH F. NEGRO, Petitioner, v. THOMAS DICKENS, as a Justice of the Supreme Court, New York County, et al., Respondents.

First Department, January 26, 1965.

*David N. Fields* of counsel (*Fields, Merritt & Aronson,* attorneys), for petitioner.

*Eric A. Seiff* of counsel (*Frank S. Hogan, District Attorney*), for respondents.

BOTEIN, P. J. This proceeding, stated to be "in the form of mandamus pursuant to Article 78 of the Civil Practice Law and Rules", was initiated by petition filed in this court. Petitioner is an inmate of Matteawan State Hospital. The respondents are "Hon. Thomas Dickens, Justice of the Supreme Court, New York County, and Frank S. Hogan, District Attorney for New York County." The petition seeks a review of an order by Justice DICKENS denying a motion on behalf of petitioner to dismiss an indictment against him, and prays that this court dismiss the indictment.

Petitioner was indicted on March 3, 1944 for robbery in the second degree, grand larceny in the first degree, assault in the second degree, and prisoner escaping as a felony. On March 27, 1944 petitioner pleaded not guilty, and on June 19, 1944, before trial, he was committed to Matteawan State Hospital, where he is still confined. The commitment was made pursuant to section 662-b of the Code of Criminal Procedure on the ground that petitioner was in such state of insanity as to be incapable of understanding the charge against him or of making his defense. At the time of petitioner's commitment section 662-b provided that a defendant so committed to a State institution "shall remain in such institution until he is no longer in such state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or of making his defense thereto". The corollary of this provision was that a person charged with but not convicted of crime would remain in such an institution until found mentally competent, and then returned to court for resumption of the criminal proceedings or legal discharge. There was no provision for dismissal of the charges accompanied by continued detention of such a person in a Department of Correction hospital or a civil mental hospital under the jurisdiction of the Department of Mental Hygiene if the latter offered more appropriate care and treatment.

Subsequently, as a result of recommendations by the Department of Mental Hygiene (see N. Y. State Legis. Annual: 1958, pp. 16, 468; 1959, p. 6), section 662-b was amended to permit the dismissal of an indictment *upon consent of the District Attorney,* in certain circumstances and with certain safeguards, although the defendant had not recovered from his mental affliction (L. 1958, ch. 705; L. 1959, ch. 337). The section now concludes with the following paragraph: ," Notwithstanding any provisions of this chapter to the contrary, any court having jurisdiction in any case heretofore or hereafter arising under this chapter may upon ten days notice to and upon consent of the district attorney dismiss the indictments or proceedings against the defendant upon its own motion or upon the motion of the district attorney or upon the motion of the defendant or of anyone on his behalf or upon the motion of the head of the institution in which the defendant is so confined with the approval of the head of the department having jurisdiction of such institution upon a showing that the defendant is a resident or citizen of another state or country and that he may be removed thereto upon the dismissal of the indictments or proceedings, and in any case at any time after two years from the date of the defendant's commitment to a mental institution upon such notice to and upon such consent of the district attorney and upon a showing that such defendant has remained continuously confined because of mental illness or mental defect. In the event of the dismissal of the indictments or proceedings as herein provided, a defendant confined to the Matteawan state hospital shall be retained therein as provided in section four hundred nine of the correction law. In the event of the dismissal of the indictments or proceedings as herein provided, and if the defendant shall be confined to an institution in the department of mental hygiene and shall continue to be so mentally deranged as to require continued treatment and confinement in an institution, the head of the institution where such defendant may be confined or anyone on his behalf, or any of the persons mentioned in section seventy-four of the mental hygiene law, may make application for the certification of such defendant as provided in such law for the certification of a person not in confinement on a criminal charge."

It will be noted that dismissal of the indictment pursuant to the amendatory provisions by no means imports that the inmate will be released to the community while still suffering from mental ailment. In sponsoring the amendments the Department of Mental Hygiene pointed out that mentally deranged persons under indictment were held in close confinement and that " [t]he

most effective treatment procedures must be denied to them because of the restrictive nature of their custody.''

Petitioner's brother, desiring to secure such better treatment procedures for petitioner, asked that he be transferred from Matteawan State Hospital to a less restrictive institution — a civil mental hospital; and the very purpose of the motion to dismiss the indictment was, as counsel had put it in a letter to the Matteawan Superintendent written in September, 1964 and before the motion was made, ''so that he will have a better chance of ultimate transfer to a civil mental hospital.'' In reply to the letter the Superintendent, while commenting that petitioner had shown evidence of schizophrenic deterioration throughout his hospital residence, also stated: ''This patient has been neither suicidal nor assaultive for many years * * * For a little over a year he has been on his present ward, and during that time has not shown any aggressive behavior, and has participated in some minor ward work.''

Counsel communicated this information to the District Attorney, who indicated that consent to a dismissal of the indictment would be forthcoming if the Superintendent would write the District Attorney that '' the patient's behavior is such that dismissal of the indictment and transfer of the patient to a civil hospital would not be prejudicial to the public interest.'' However, the Superintendent declined to recommend dismissal of the indictment until the Department of Mental Hygiene determined that petitioner was suitable for care in a civil hospital. Accordingly, counsel wrote to the Department of Mental Hygiene, but that agency appears to have been of the view that it was for Matteawan to determine whether '' it would be beneficial to the therapy program for this patient to have his indictment dismissed.'' The Department of Mental Hygiene took the position that in the instant case '' Matteawan is under the jurisdiction of the Department of Correction.'' When the Matteawan Superintendent was informed of the position of the Department of Mental Hygiene, he stated in a letter to petitioner's counsel: '' I would resent any member of our psychiatric staff at this hospital, making the decision that any patient is suitable for care in a civil hospital. This is a determination that should be made and must be made by the Department of Mental Hygiene. Our staff is working in a closed hospital and they cannot be the authority for the open civil hospitals of New York State.'' The letter concluded with the suggestion that counsel '' refer this matter to the Department of Mental Hygiene for a decision.''

The record does not disclose whether petitioner communicated further with the Department of Mental Hygiene. There is in

the record the department's reply to a letter from petitioner's counsel inquiring whether petitioner was regarded as a "maximum security patient," in which the department stated: "the reports of the examiners who have examined this patient and reviewed his case from time to time have not expressed their judgment in exactly the term of maximum security, but rather in terms of the potentialities of this patient's mental illness being such that the controls exercised at Matteawan are best suited and such controls are not available in a civil state hospital." Finally, the record includes the following letter, dated October 19, 1964, from the Superintendent of Matteawan to the District Attorney, submitted by the latter in opposition to the motion to dismiss the indictment and apparently written after the motion was made: "With reference to your inquiry please be advised that Joseph F. Negro was admitted to the Matteawan State Hospital on June 20, 1944 in accordance with Section 662 of the Code of Criminal Procedure. Following admission he was given a diagnosis of Schizophrenia and he is not recovered so that he could be returned to court to face his indictment. He was examined by a psychiatrist from the Department of Mental Hygiene in 1960 and again in 1963, and was not considered to be suitable for care in a civil hospital. In the rigid supervised atmosphere of a criminal hospital, he has not recently been aggressive. At this time, however, it is believed that due to his mental condition, he has the capacity to act in a dangerous manner in a less restricted environment."

We are therefore confronted, upon this record, with a situation in which two official agencies function within medical areas and each during a protracted exchange disavows the responsibility of furnishing the District Attorney with a statement as to whether petitioner's transfer to a civil hospital would be in the public interest. In his affidavit upon the motion the District Attorney equated the issue of "danger to the community" with "the public interest" as a controlling factor as to whether the indictment should be dismissed. Obviously, the District Attorney cannot decide this issue without authoritative advice from men of medicine.

The District Attorney argues that an article 78 proceeding is inappropriate in the instant circumstances. But were we free to give the order denying petitioner's motion the amplest review, it seems clear that the order was proper. Plainly, under section 662-b, dismissal of the indictment over the objection of the District Attorney is not authorized. (See *Matter of McDonald* v. *Sobel*, 272 App. Div. 455, affd. 297 N. Y. 679, where a Trial Judge was directed to vacate an order permitting defendants

to plead guilty to lesser offenses than those for which they had been indicted, the order having been made without the District Attorney's recommendation as required by section 342-a; and, see, *People ex rel. Hirschberg* v. *Orange County Ct.*, 271 N. Y. 151, 155.) Nor does petitioner indicate by what authority this court can compel the District Attorney to withdraw his objection (see CPLR 7804, subd. [b]; cf. *Matter of Hassan* v. *Magistrates' Ct.*, 20 Misc 2d 509). In our opinion, also, petitioner is not aided by section 671, which provides that the court "may, either of its own motion, or upon the application of the district attorney, and in furtherance of justice order an action, after indictment, to be dismissed." In view of the specificity of section 662-b, especially of the protective procedures to be followed upon dismissal of the indictment, it is questionable that the Legislature intended the earlier enacted section 671 to be invoked in a case like the present.*

In any event, and even assuming that petitioner's proper place of confinement is a civil hospital, it would hardly be prudent in this case to dismiss the action under section 671, the provisions of which contain no authority to commit to any institution (and, see, § 670; cf. *People* v. *Edsall*, 171 Misc. 277). The frankly stated purpose of this application is to procure

---

* A bill which would have amended section 662-b to permit dismissal of indictments without the consent of the District Attorney was recalled from the Governor after passage by the Legislature in 1957 (S. Int. 1372, Pr. 1429; see New York Legislative Record and Index, 1957, p. 124). Opposition to the bill was expressed for the reason that it failed to give the District Attorney effective standing to object to the dismissal (see 1957 Legislative Bulletin No. 108, Committee on Criminal Courts, The Association of the Bar of the City of New York). When the bill ultimately enacted as L. 1958, ch. 705 was submitted to the Governor, the Commissioner of Mental Hygiene, in his memorandum of indorsement, stated: "The bill empowers the court having jurisdiction of any such case to dismiss the indictment upon consent of the district attorney. These are enabling and permissive amendments which vest in the prosecuting authorities and the courts the ultimate judgment as to the wisdom in the public interest of dismissal of an indictment in any case; a power which they do not have under present law." (N. Y. State Legis. Annual: 1958, p. 468.) The above-mentioned Committee on Criminal Courts, also recommending approval, concluded its report as follows: "Sufficient safeguards exist in the bill to protect the public interest. The court, the district attorney, and the various other authorities, are on notice of the proceeding. Unless the district attorney consents, the indictment may not be dismissed." (1958 Legislative Bulletin No. 42.) Section 662-b is one of the sections of the Code of Criminal Procedure constituting chapter V, which is headed, "Inquiry into the insanity of the defendant, before or during the trial, or after conviction". The last of such sections (§ 662-f) reads: "The provisions of the foregoing sections shall not be deemed to be superseded by any provision of the mental hygiene law or other statute unless specifically so provided, nor shall the jurisdiction of the court to enforce its own orders be impaired."

petitioner's transfer to a civil hospital, not to effectuate his uncontrolled return to the community.

Although the petition may not be sustained, we think it appropriate to add that the record leaves us in some doubt that the objection to dismissal of the indictment reflects all pertinent factors. Matteawan appeared at first to hold vigorously to the view that the Department of Mental Hygiene was the authority competent to evaluate petitioner's fitness for transfer to a civil hospital; yet in the end, apparently, some cautious evaluation was made by Matteawan, albeit with a reference to examinations in earlier years by the department. As the District Attorney acknowledges, there was "obviously some confusion". The possibility that the confusion may have affected petitioner adversely because of Matteawan's apparently grudging acceptance of responsibility for making the evaluation is a cause of grave concern. If opposition to dismissal of an indictment under section 662-b is to rest on a medical evaluation, surely any uncertainty regarding the person who ought to make the evaluation should be inquired into and dispelled.

Whether this is in any circumstance a case in which a District Attorney's course should be governed by a medical evaluation is a question also thrown off by the record. In the event of dismissal of an indictment under section 662-b, the defendant, if confined to Matteawan, must be retained there as provided in section 409 of the Correction Law, which prescribes the disposition of prisoners in Matteawan whose sentences have expired.* Petitioner alleges that he has now been confined in

---

* "§ 409. Disposal of insane prisoners after expiration of term of imprisonment. Whenever any prisoner in the Matteawan state hospital shall continue to be insane at the expiration of the term for which he was sentenced, he may be retained therein until he has recovered or is otherwise legally discharged. The superintendent of such hospital may discharge and deliver any patient whose sentence has expired, and who is still insane, but who, in the opinion of the superintendent is reasonably safe to be at large, to his relatives or friends who are able and willing to comfortably maintain him, without further public charge; and such patient may, in the discretion of the superintendent, be provided with the whole or a portion of such allowances as are hereinafter granted to recovered prisoners. Whenever any prisoner, who, by reason of his insanity, shall have been retained beyond the date of the expiration of his sentence shall recover, he may be discharged by the superintendent, and such prisoner shall be entitled to ten dollars in money, suitable clothing and a railroad ticket to the county of his conviction or to such other place as the commissioner of correction may designate at no greater distance. Any prisoner in the Matteawan state hospital, whose term of imprisonment has expired by commutation or otherwise, and who is not recovered may, upon an order of the commissioner of mental hygiene, be transferred to any institution for the insane."

Matteawan for a period exceeding the maximum sentence to which he would be subject after trial and conviction. If so, and if hereafter petitioner should regain his sanity and be tried and convicted, it would seem that by virtue of the credit granted by section 2193 of the Penal Law as it now reads (cf. *Matter of Goldman* v. *Snyder,* 278 App. Div. 979, affd. 304 N. Y. 672; see *People ex rel. Striar* v. *Fay,* 14 Misc 2d 231), petitioner would never in fact be imprisoned under the indictment. A prosecutor may believe that a conviction in itself will serve some value although no punishment is to follow, but there is no hint of such a belief here, and the following extract from the District Attorney's brief appears to set forth the operative reason for his opposition to dismissal of the indictment: "The available evidence would therefore indicate that dismissal of the indictment at this time, with the concomitant transfer of the petitioner to a civil institution would not be a medically advisable procedure."

Apparently then, the indictment is being continued, not to effectuate, now or in the future, the ordinary purpose of a criminal prosecution, but solely to enforce the detention of petitioner in Matteawan as a medical measure. One may query whether such a use of section 662-b was intended by the Legislature, but, granting the intention, it does not follow that the need for continued detention should invariably determine the need for continuing the indictment. Continuing the indictment in the case at bar presents this statutory incongruity: namely, that whatever benefit section 409 of the Correction Law bestows on a Matteawan inmate is available to one who has been previously found guilty of crime and whose sentence has expired, but is denied to petitioner, who still possesses the presumption of innocence and whose sentence will never begin. Since the provisions of section 409 seem consistent with continued detention of petitioner in Matteawan as a "medically advisable procedure", we should think that the District Attorney may properly inquire, and indeed should, why petitioner's circumstances are such that the restraints of section 409 are thought ineffective.

It surely was never the intention of the Legislature to require the District Attorney, a man of law, to make a medical decision, even when advised by competent and responsible authority. And in view of the latitude afforded the Departments of Correction and Mental Hygiene in retaining an inmate originally committed following indictment, a District Attorney could justify granting or withholding his consent to a dismissal of the charges upon consideration of whether traditional prose-

cuting purposes would be served. He could then quite appropriately leave the problem of the subsequent disposition of the inmate to the better qualified medical institutions within the boundaries of the enormous grant of discretion reposed in them by the Legislature.

It is not for this court to consider whether, in another forum and in a different type of proceeding, petitioner may properly complain that he is not being treated on a parity with prisoners in Matteawan whose terms have expired (cf. *People ex rel. Kamisaroff* v. *Johnston,* 13 N Y 2d 66, 71; *People ex rel. Brown* v. *Johnston,* 9 N Y 2d 482, 485).

The petition should be dismissed, without costs.

BREITEL, VALENTE, STEVENS and EAGER, JJ., concur.

Petition unanimously dismissed, without costs.