Louis B. Heller, J.
Plaintiff wife, in this separation action, moves for an order awarding her temporary alimony. A request for an allowance of counsel fee has been withdrawn and therefore need not be considered. The moving papers, together with a summons and a “ proposed complaint ” were served on defendant on September 13, 1967. This application is thus governed by the amendments to the Domestic Relations Law (L. 1966, ch. 254) effective September 1,1967.
Defendant’s attorney has refused to accept the “ proposed complaint ” on the ground that service of a complaint with the summons is interdicted by article 11-A (§ 211) of the Domestic Relations Law. This section, insofar as pertinent, provides:
‘1 An action for divorce or separation shall be commenced by the service of a summons. A verified complaint in such action may not be served until the expiration of one hundred twenty days from the date of service of the summons or the expiration of conciliation proceedings under article eleven-B of this chapter, whichever period is less. ’ ’
However, article 11-B, which governs conciliation proceedings, refers specifically only to divorce actions (§§ 215-a, 215-c, 215-g). Accordingly, the plaintiff in a separation action, if we construe article 11-B as presently written, is relegated to a never-never land where she may neither avail herself of conciliation procedures, nor proceed with the action by service of a complaint, until the expiration of a 120-day ‘ ‘ cooling off” period. The mischief, in such an untenable construction of the obviously inconsistent statutes, is that during the lengthy “ cooling off” period the wife and children are left in a refrigerated limbo where, unless provided for, they are likely to freeze to death. That is, if they do not starve first.
In the absence to date of available transcripts of the Senate and Assembly debates, and lacking any reports from the Senate Judiciary Committee or the Assembly Committee on Rules, which counsel to Senator Hughes assures me will shortly be forthcoming, references to probable legislative intent are necessarily speculative, to say the least, and there is no warrant for *1012 any attributions of legislative intent. However, the court can make one pronouncement without trepidation: The ‘ ‘ intent ’ ’ of Senator Wilson and Assemblyman Sutton, and the “ intent ” of Senators Hughes, Brydges, and Speaker Travia, differed substantially.
Having been privileged to serve in legislative bodies on both the State and national level, I am thoroughly familiar with the give and take of last minute compromises, the helter-skelter of legislative adjournment, the hasty drafting and redrafting "of bills, particularly in the case of a bill so controversial, and the subject of such bitter disputation, as this long overdue and often torpedoed legislation.
After patiently enduring a repressive and archaic law, we must be thankful that after 179 years we reached the point where a liberalized statute could be passed. Even the most critical will have to admit that the bill as finally enacted, with all its imperfections, is better than no bill at all. One note of hope is a statement attributed to Senator Brydges {New York Times, March 29, 1966): “ Our bill is not carved in stone.” For this we can be thankful. That one of the chief architects of the bill recognizes that the statute is amenable to future legislative amendment and elucidation is a hopeful and auspicious augury.
Since section 211 of article 11-A mandates that a complaint in an action for separation may not be served until the expiration of 120 days from the date of the service of a summons, or the expiration of conciliation proceedings, whichever period is less, the statute is meaningless if it was not intended that the conciliation procedures enunciated in article 11-B (§ 215 et seq.) were applicable to separation actions. The incongruity of articles 11-A and 11-B is obvious. Was the inclusion of separation actions in section 211 inadvertent, or was the noninclusion of separation actions in article 11-B the inadvertency? For the present it remains for the courts to interpret the law as it exists, despite the glaring inconsistency.
In more than a quarter of a century as a practicing lawyer, I know of no Judge before whom I appeared who did not attempt to reconcile the parties before proceeding with the trial of a matrimonial action. Since 1960, as a Justice trying matrimonial actions, I have done likewise. I am not one to place much stock in statistics, and I will not spout any now, but it has been my experience that I have been at least twice as successful in reconciling husbands and wives involved in separation actions than with those seeking divorces.
It is simply a matter of striking while the iron is hot — getting the parties together before the battle lines are irrevocably *1013 and irretrievably drawn. By the time at least one of the parties has decided on the extreme and conclusive resolution of the marital problem by initiating an action for divorce, the parties are so embittered and rancorous that the good offices of the conciliator are almost wasted, although, may I hastily add, I earnestly hope that this observation will be thoroughly discredited by our dedicated conciliation bureau now encountering' its baptism by fire.
The court should be in a position to exert its influence to1 try to salvage the foundering marriage as soon as the first indications of a marital rift appear. For optimum effectiveness the Conciliation Bureau machinery should be utilized as soon as the clouds of marital disharmony descend to darken the prospects of continued wedded felicity. Time is of the essence. The earlier the attempt to adjust marital differences, the greater the chance for success.
The machinery of the conciliation bureau should be concentrated on -hopeful rather than on less hopeful cases. To use a depressing analogy: Although it is not suggested that medical ministrations be denied to those suffering from terminal cancer,, let us not abandon those patients with a fighting chance for recovery. The State has gone to great expense to set up the conciliation apparatus. It is most respectfully suggested that the Legislature amend article 11-B to include actions for separation in the conciliation proceedings. In fact, it would be even more advisable to use the term “matrimonial actions ” in all instances in articles 11-A and 11-B where reference is made to actions for divorce.
Pursuant to section 215-e an application for alimony and counsel fees in a conciliation proceeding must, if such relief be required, be made to the Conciliation Commissioner ‘ ‘ who shall hold a hearing and take testimony as to the financial ability and needs of the parties and recommend and report his findings to a justice of the supreme court of the appropriate judicial district.”
This section thus narrowly circumscribes the proof on such application “ only to the financial ability and needs of the parties.” Defendant in the instant application resists the application on the ground that in addition to the premature service of the “ proposed complaint ”, the relief requested, particularly for temporary support, can only be granted in a conciliation proceeding upon papers which refer only to financial needs and ability of the parties.
The rationale underlying section 211 with respect to the form of the pleadings is to eliminate one impediment to a possible *1014 reconciliation, namely, the incendiary charges and counter-charges characteristics of the usual accusations elucidated and exaggerated by the estranged spouses typical of pleadings in actions for.divorce and separation, which only tend to intensify the conflict. Delaying the bitter adversary aspects of pleadings in matrimonial actions until it has been determined that reconciliation of the parties is hopeless, is one of the salutary virtues of the new law.
On the other hand, unless the court is apprised in some manner of the underlying causes for dissension in a separation action, how can a meaningful temporary order be made? In a separation action based on defendant husband’s cruelty, how can the court grant the wife exclusive possession of the marital home unless the merits of the action are in some manner conveyed to.the court? Or how can the court make a determination in a situation where the defendant interposes a denial that the parties are married at all? (See Alexander v. Alexander, Kings County., Spec. Term, Part V, N. Y. L. J., July 21, 1967, p. 10, col. 8.)
I have read the thoughtful decision of my esteemed colleague in Queens County, Mr. Justice Holtzman, in Crocker v. Crocker (54 Misc 2d 738), which covers a similar application. I cannot agree with his conclusions that the Legislature intended this 120-day hiatus as a voluntary conciliation and ‘ ‘ cooling off ’ ’ period in a separation action, and his determination to limit proof to financial need only in future applications. Traditionally in this country control over requirements and procedures in matrimonial actions is statutory and vested exclusively in State Legislatures (18 Carmody-Wait 2d, New York Practice, p. 448, § 114:2; 1 Foster & Freed, Law and the Family — New York, p. 5; Grossman, New York Law of Domestic Relations, p. 381; 17 Am. Jur. 257, § 6). Since it is the sole prerogative of the Legislature to control procedures and remedies in matrimonial matters, I am left without power to invade an area which is not covered under conciliation procedures. As stated in CarmodyWait (2d ed., vol. 18, p. 448, § 114:2) “ nor may the equity powers of the court be invoked to change the requirement and procedure set forth in the statutes by the legislature.” Though section 236 permits award of temporary alimony, even where the wife has failed to show probability of success in the action (Frank v. Frank, 26 A D 2d 837, 838), it does not deprive the parties of the right to present, and the court of the opportunity to investigate, the basis for the matrimonial differences. As a. matter of fact, though alimony may also be granted where the wife is chargeable with misconduct’, it cannot be done where *1015 ‘ ‘ such misconduct would itself constitute grounds for separation or divorce ” under section 236. I cannot conceive how such a situation can be presented or proven where a party is limited only to financial needs and ability in moving papers for alimony. I think it proper at this juncture to point out further that though the possible success or failure of a cause of action may be a basis for dissent between reasonable men, the complete absence of any discernible cause of action is a matter with which I would be very much concerned. If the court and the parties are deprived of a complaint which sets forth at least a colorable cause of action as well as supporting papers to disclose minimal facts to establish a justiciable controversy, the net residuum can probably be handled by a calculating machine.
The service here of the complaint with the summons is contrary to section 211. Apparently plaintiff’s counsel, by labeling it a “ proposed complaint”, has thus attempted to avoid the statutory prohibition. It is, of course a nullity and is stricken.
Though there is no mandatory provision for conciliation in such a situation, I do hope that the parties here may usefully employ the 120-day period in a voluntary attempt to find an area of understanding and agreement so that service of the complaint may become academic and unnecessary when the permissible time to do so will arrive.
Plaintiff is awarded temporary alimony for her support and the support and maintenance of the infant issue of the marriage in the sum of $70 per week commencing September 22, 1967. Plaintiff is granted custody of the infant children of the marriage with liberal visitation to the defendant to be agreed upon by the parties.
I am fully cognizant that much of this opinion is obiter dicta. However, I have indulged myself because I am hopeful that the Legislature will resolve the impasse created by the incompatability of articles 11-A and 11-B, a pair the court has been unable to reconcile.