Louis B. Heller, J.
Plaintiff wife seeks a divorce predicated on subdivision (3) of section 170 of the Domestic Relations Law, to wit, that defendant husband has been confined in prison for a period of three or more consecutive years after their marriage.
The parties were married in Brooklyn, New York on November 30, 1957. There are two daughters of the marriage, 10 and 7 years of age. The complaint herein contained two causes of action; the first based on cruel and inhuman treatment was discontinued at the trial, and the plaintiff proceeded solely on the ground of three years ’ imprisonment.
Defendant is presently confined to Clinton Prison, Dannemora, where he admits being served with a summons in this action on July 8, 1968. On April 26, 1966 defendant was convicted in Kings County of the crime of robbery in the third degree upon his own confession and plea of guilty. He was sentenced to State prison for 10 to 20 years on June 28, 1966. The record further shows that the defendant also entered a plea of guilty to a felony, and was sentenced on March 16, 1967 in New York County to *1028 serve 5 to 10 years in State prison, the term to run concurrently with the sentence previously alluded to.
A letter from the Department of Correction, State of New York, received in evidence, states that the defendant was received in Sing Sing prison on July 14, 1966, and started serving the 10 to 20 year sentence on that date. He was given credit for 396 days ’ jail time to he applied to that sentence.
The question was raised that since the defendant was first sentenced to prison on June 28, 1966 he had not been confined in prison for the requisite three years at the time the action was instituted on July 8, 1968. Conforming the pleadings to the proof at .the time of trial could not cure that apparent deficiency. However, defendant had been incarcerated for a period of 396 days prior to sentencing.
Subdivision 3 of section 70.30 of the Penal Law of the State of New York provides as follows: “ Jail time. The term of a definite sentence or the maximum term of an indeterminate sentence imposed on a person shall toe credited with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence. In the case of an indeterminate sentence * * * The credit herein provided shall be calculated from the date custody under the charge commenced to the date the sentence commences and shall not include any time that is credited against the term or maximum term of any previously imposed sentence to which the person is subject.”
The records of the Department of Correction indicate that this defendant began serving his sentence and will be credited for his sentence time beginning June 12, 1965.
Defendant argues that since he was imprisoned prior to the enactment of the new Divorce Reform Laws of 1966 and since there is nothing contained therein which gives such laws retrospective application, any divorce decree granted to his wife based on the Divorce Reform Laws of 1966 would be nugatory and of no legal impact.
Furthermore he contends, at the time of his incarceration, the only ground for divorce in New York was adultery, and since the complaint makes no charge alleging adultery, the complaint is defective on its face and ought to be dismissed on the court’s own motion.
Defendant’s eight-page handwritten answering affidavit is a remarkably literate and scholarly dissertation on ex post facto legislation. He makes the point, inter alia, that even if the marriage herein did fall within the ambit of the new law, since the effective date of subdivision (3) of section 170 is September 1, *1029 1967, how, defendant rhetorically inquires, can plaintiff possibly invoke the three years ’ imprisonment ground for divorce before September 1,19701?
A similar argument was propounded in Kaplan v. Kaplan (56 Misc 2d 860, affd. 31 A D 2d 247 [2nd Dept. 1969]) on the question of an “old” abandonment. My opinion in Kaplan, slightly paraphrased, applies to the instant action.
I have commented at length on the intent of the Legislature in adopting this long overdue liberalization of our antediluvian divorce laws in my opinions in Beanland v. Beanland (54 Misc 2d 1010) and Yoli v. Yoli (55 Misc 2d 416); LeClaire v. LeClaire (58 Misc 2d 41); Frischman v. Frischman (58 Misc 2d 208).
The Legislature of this State after 150 years passed a law liberalizing the ability of parties to obtain a divorce on grounds other than adultery without having to go through the shadow boxing of traveling to other jurisdictions to obtain divorces via spurious and superficial residence requirements. I will not nitpick at split procedural hairs when doing so will frustrate the benign design of this long awaited legislation. To hold that plaintiff must wait three years beyond September 1,1967 before she can plead defendant’s imprisonment for the necessary period would be a patent injustice and do violence to common sense.
Plaintiff should not be denied the opportunity to make a new life for herself before the relentless ravages of time take their toll.
Defendant’s insistence that he be brought to court for the purpose of personally opposing his wife’s action for divorce is denied for the reasons enunciated in Bagley v. Bagley (57 Misc 2d 388; cf. Garner v. Garner, 59 Misc 2d 29).
Judgment of divorce granted to plaintiff. I have signed the findings of fact, conclusions of law, and judgment as submitted by plaintiff, with the following interpolation: 1 ‘ without prejudice to a hearing on the matter of custody of the infant issue of the marriage when the defendant is released from prison.”