Breitel, J.
Defendant Michael Cerami appeals from an Appellate Division order affirming his conviction for first degree manslaughter. The principal issue is whether the conviction should be set aside because pretrial psychiatric examinations of the defendant by the expert for the prosecution, with respect to his defense of insanity, were conducted without notice to or presence of defendant’s counsel.
Following a jury trial in the Monroe County Court, defendant was convicted of first degree manslaughter and sentenced for 8 to 25 years. His conviction was unanimously affirmed by the Appellate Division and permission to appeal was granted by a Judge of this court.
The order, of the Appellate Division should be reversed, the judgment of conviction vacated, and the case remanded for a new trial. Defendant was entitled to counsel’s presence at the first psychiatric examination, and failure on objection to exclude the psychiatrist’s testimony was prejudicial error. Failure to object prior to the pretrial suppression hearing did not constitute waiver or estoppel, as to the first psychiatric examination.
On May 22,1970, defendant was indicted for the manslaughter of one Stanley Bohrer on or about March 23, 1970. Defendant admits that the prosecution proved that he did in fact shoot Bohrer on the date in question.
Bohrer, as the supervisor of a vocational high school in Rochester, had in the summer of 1966 asked for Cerami’s resignation as a cosmetology teacher. More than four years later, Cerami confronted Bohrer in an alley outside the City School Board where Bohrer had been working, and fatally shot him three times. The defense pleaded insanity, asserting that Cerami was a paranoid schizophrenic who believed Bohrer had discharged him on unproven charges of homosexuality, and then had spread malicious rumors to prevent Cerami from regaining employment.
The defense submitted substantial evidence to establish defendant’s insanity. It was shown that Cerami had been diagnosed *246 as a paranoid schizophrenic at the Strong Memorial Hospital at Rochester, where he had been an outpatient intermittently from 1967 through 1969; at the Veterans’ Hospital at Canandaigua, where he had been admitted for four to six weeks in 1968; by a clinical psychologist who examined him on March 20, 1970, only three days before the killing; and at the Matteawan State Hospital, where he had been confined after his arrest.
Dr. William Libertson, a psychiatrist who examined Cerami only three days after the crime at the request of defense counsel, confirmed the schizophrenia-paranoia diagnosis and concluded that defendant had lacked substantial capacity to know or appreciate the consequences of his act. Most important, the same conclusions were reached by Dr. David Barry, the Acting Director of the Monroe County Mental Health Clinic for Courts and Probation Departments, who on three occasions examined the defendant as an “ independent ” expert designated by court orders.
The only expert testimony offered at trial by the People to rebut the insanity defense was that of Dr. Benjamin. Pollack, and the issue is whether this testimony was properly admitted into evidence.
When defendant served notice dated April 23, 1971 on the District Attorney (pursuant to former Code Grim. Pro., § 336; now CPL 250.10) advising that he would rely on the defense of insanity, Eugene Bergin, an Assistant District Attorney, immediately telephoned defendant’s counsel, David Cohen of Liberty, in Sullivan County, a considerable distance, to request a pretrial psychiatric examination of defendant. Bergin avers that Cohen gave a general consent to this examination, while Cohen asserts that he did no more than acknowledge the prosecution’s right to conduct one. There was no discussion as to date, place, means or method of examination.
On April 23, 1971, the County Court Judge, upon Bergin’s request, orally issued an order for the psychiatric examination, again specifying no details. The examination was conducted by Dr. Benjamin Pollack on May 7, 1971, without defendant’s counsel being present. Cohen avers that he did not learn of the examination until his client informed him of it shortly after. He then called Bergin to express surprise that he had received no notice.
*247 In early June, 1971, Bergin telephoned Cohen to tell him that further psychiatric examination of defendant was deemed necessary. Cohen consented, but stated that an order was needed. This order was issued on June 14, 1971, by the County Court Judge; again, there were no details as to time or place. On July 2, 1971, Dr. Pollack conducted his second examination of the defendant, again without Cohen present.
On July 6, 1971, a pretrial confession and suppression hearing was held before Acting County Judge Robert P. Kennedy, one of the issues being whether defendant was mentally ill when he made a confession to a police officer. To rebut this contention the People called Dr. Pollack to the stand. Cohen then objected to the testimony, arguing that Pollack’s examination had been illegal under the rule of People v. Al-Kanani (26 N Y 2d 473), because defendant had been denied his right to counsel. Apparently neither the prosecution nor the court was aware of this court’s decisions in Al-Kanani and a later case, Matter of Lee v. County Ct. of Erie County (27 N Y 2d 432). Cohen himself did not know that Al-Kanani had gone beyond the Appellate Division.
The Trial Judge, now aware of the recent rulings in this court but applying them narrowly as he might reasonably have thought proper, ruled against the defense on the objection. He properly noted that the prosecution had acted in good faith, that the examination was not surreptitious as in Al-Kanani, and emphasized that defense counsel had not objected earlier. He concluded that “ the People should [not] be penalized ” for this “ unfortunate misunderstanding ”. The jury was sworn and the trial began that same day.
In Matter of Lee v. County Ct. of Erie County (supra) this court held that pretrial psychiatric examinations are a critical stage in a criminal prosecution under the rationale of United States v. Wade (388 U. S. 218), and that defendant is entitled to have counsel present in an observer’s capacity “ to make more effective his basic right of cross-examination ” (27 N Y 2d, at p. 444). Three of the Judges of this court indicated in the Lee case that they would permit defense counsel to take an active role in the examination (see dissenting opn. per Fuld, Ch. J., 27 N Y 2d, at pp. 445, 446; dissenting opn. per Breitel, J., 27 N Y 2d, at p. 447).
*248 In light of the Lee case, then, the notice of psychiatric examination which the prosecution must furnish the defense under People v. Al-Kanani (26 N Y 2d 473, supra) should include sufficient details as to date, time, and place to permit defendant’s counsel to attend. To advise defendant’s counsel only that an examination is planned is not enough.
Defense counsel was given no such notice as to Dr. Pollack’s first examination of the defendant. There was no written order, and even the oral order on the trial record did not suggest the circumstances of the examination. It should not be defense counsel’s responsibility to elicit this information from the District Attorney.
The suppression hearing was the first appropriate occasion for the defense to make formal objection to Dr. Pollack’s testimony and the defense did not waive the objection by waiting until then. At that time, any possible prejudice to the prosecution could have been alleviated. The jury had not yet been rqipaneled, and the trial could have been adjourned to allow another psychiatrist for the People to examine the defendant. Although Judge Kennedy was understandably concerned that the People had been taken by surprise, failure to give defense counsel notice and the resultant adverse effect on cross-examination of the People’s psychiatrist may not be overlooked.
After the first examination, defense counsel should have known that the District Attorney and the court were unfamiliar with recent changes in the law, and should have extended himself more to protect his client’s rights in the second examination. His failure to do so should be deemed a waiver of the right to be present (cf. People v. Passero, 65 Misc 2d 596, 597; People v. Luciano, 58 Misc 2d 1084, 1085).
Finding the second examination lawful, however, does not affect the ruling here. Dr. Pollack’s opinion as to defendant’s sanity was expressly based on both examinations, and where the first examination was unlawful, it was prejudicial error to admit the expert witness’ opinion as to defendant’s sanity. In People v. Keough (276 N. Y. 141) it was held prejudicial error to admit psychiatrists’ opinions as to defendant’s sanity when these opinions were based in part on personal observation and in part on statements by third parties who did not testify fully at trial. The rationale was that the defense had been denied *249 a proper opportunity to cross-examine the third parties and thereby bring before the jury the underlying “ facts ” from which the expert had drawn his conclusion (276 N. Y., at p. 147; cf. People v. Samuels, 302 N. Y. 163, 172; see 3 Wharton’s Criminal Evidence [13th ed.], § 599, at p. 157). Because Matter of Lee (supra) holds that defense counsel is necessarily hampered in Ms ability to cross-examine the State’s psycMatrist if demed the opportumty to attend the psycMatric examination, any expert opimon based even in part upon such improper examination should likewise be excluded. As in Keough, it is irrelevant that the psycMatrist may have, apart from the invalid examination, properly acquired some part of the foundation for Ms expert opimon.
In testifying, Dr. Pollack was able to distingmsh with specificity what he learned from the defendant in the first examination, from what he learned from Mm during the second examination. If, upon a new trial, Dr. Pollack felt competent to offer an opimon of defendant’s samty based solely on the second examination, he should be allowed to do so. Or upon a new pretrial psycMatric examination of defendant with due notice to Ms attorney, if Dr. Pollack is used again as the expert, he may perhaps be able to reconstruct so much of Ms prior invalid examination of defendant as he may choose to rely on in reacMng Ms conclusion. Such reconstruction should be complete enough in the presence of counsel to provide full protection to defendant.
Defendant urges several other grounds to sustain a reversal. He contends that the court, upon request, should have charged that if there were a finding for defendant on the insanity defense, it need not follow that defendant would go free. Defendant further argues, among other points, that it was error for the court to excuse a juror during the trial who complained of a nervous disorder. None is sufficient to warrant extended discussion.
Accordingly, the order of the Appellate Division should be reversed, the judgment of conviction vacated, and the case remanded for a new trial.
Chief Judge Fuld and Judges Burke, Jasen, Gabrielli, Jones and Wachtlbr concur.
Order reversed and a new trial ordered.