OPINION OF THE COURT
Elizabeth W. Pine, J.
This contested divorce action was commenced by plaintiff wife in 1973. Defendant, represented by private counsel appointed as his guardian ad litem,[1] opposes the divorce.
The court clearly has jurisdiction in this proceeding. The parties, married in Rochester, New York, on August 21, 1948, have both resided in New York for many years. The youngest of their four children, born on August 4, 1959, reached his majority last year.
*842 The amended complaint in this action stated two grounds for a divorce. A jury tried the issue of cruel and inhuman treatment (Domestic Relations Law, § 170, subd [1]), the second of plaintiffs claims, and denied plaintiff a divorce on that basis. With respect to plaintiffs principal claim for a divorce— that the defendant was confined in prison for a period of three or more consecutive years after the marriage within the meaning of subdivision (3) of section 170 of the Domestic Relations Law — the parties have stipulated to the dates during which and the locations at which defendant was confined. Remaining is a question of law: whether that confinement entitles plaintiff to a divorce under subdivision (3) of section 170 of the Domestic Relations Law.
On March 23, 1970, defendant shot and killed one Stanley Bohrer, a former supervisor of the defendant. (See People v Cerami, 33 NY2d 243.) The relevant facts relating to defendant’s subsequent confinement, and to plaintiffs claim under subdivision (3) of section 170 of the Domestic Relations Law are as follows:
March 23, 1970 — defendant apprehended for homicide by Rochester City Police and confined to Rochester City Jail;
March 23, 1970 — defendant transferred to confinement in Monroe County Jail;
May 4, 1970 — defendant transferred, pursuant to court order, to confinement in Matteawan State Hospital, following a determination that he was not competent to stand trial;
March 4, 1971 — defendant transferred, upon an indictment, to confinement at Monroe County Jail;
July, 1971 — defendant convicted, after trial by jury, of manslaughter in the first degree committed on March 23, 1970; confinement at Monroe County Jail continued;
August 30, 1971 — defendant given indeterminate sentence of 8-25 years imprisonment; also, transferred to confinement at Attica State Prison;
September 30, 1971 — defendant transferred to confinement at Great Meadow State Prison;
December 24, 1971 — defendant transferred to confinement at Dannemora State Hospital;
April 20, 1972 — defendant transferred to confinement at Auburn State Prison;
December 27, 1973 — Court of Appeals decides People v Cerami (33 NY2d 243, supra), vacating judgment of conviction *843 and remanding for new trial; confinement at Auburn State Prison continued;
February 13, 1974 — defendant transferred to confinement at Monroe County Jail for new trial;
August 1, 1974 — defendant, upon retrial, found not guilty by reason of insanity and confined to Rochester Psychiatric Center.
It is also uncontroverted that, during each afore-mentioned custodial transfer of the defendant beginning on March 23, 1970 and ending on August 1, 1974, defendant was in the custody of a law enforcement agency.
The undisputed facts show that before the defendant was ordered committed to the Rochester Psychiatric Center in 1974, he was confined in local jails and in facilities operated by the State Department of Correctional Services between March 23, 1970 and August 1, 1974, or more than four consecutive years. However, defendant argues that, as a matter of law, neither the period of his confinement in Rochester City Jail, Monroe County Jail and Matteawan State Hospital immediately preceding sentencing on August 30, 1971 (one year and five months), nor the period of his confinement in Auburn State Prison and Monroe County Jail immediately following the reversal of that sentence by the Court of Appeals on December 27, 1973 (more than seven months), was time during which he was confined in prison within the meaning of subdivision (3) of section 170 of the Domestic Relations Law. According to defendant’s position, the period of his confinement in prison was two years and four months, some eight months short of the three-year statutory period.
Resolution of the issue of plaintiffs entitlement to a divorce pursuant to section 170 of the Domestic Relations Law requires some consideration both of the purpose of that statute and of the relationship borne by that statute to the other provisions of New York law which deal with marriage and imprisonment.
The Legislature of this State[2] has provided two entirely independent grounds for the termination of marriage involving an imprisoned spouse. The earlier of these is noted in *844 section 6 of the Domestic Relations Law (void marriages), which provides: "A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless * * * 2. Such former husband or wife has been finally sentenced to imprisonment for life”. Subdivision 1 of section 79-a of the Civil Rights Law, the statute underlying subdivision 2 of section 6 of the Domestic Relations Law, provides, with some exceptions not relevant here, that a person who is sentenced to imprisonment for life is thereafter deemed to be civilly dead. (See Avery v Everett, 110 NY 317.)
In contrast, subdivision (3) of section 170 of the Domestic Relations Law, not enacted until 1966 (L 1966, ch 254, as amd by L 1968, ch 700), is directed toward an entirely different situation: "[t]he confinement of the defendant in prison for a period of three or more consecutive years after the marriage of plaintiff and defendant.”
Subdivision 2 of section 6 of the Domestic Relations Law and subdivision 1 of section 79-a of the Civil Rights Law, on the one hand and subdivision (3) of section 170 of the Domestic Relations Law, on the other, address distinct situations. The distinction, moreover, is a significant one. Under the former provisions, the "stay-at-home” spouse is afforded relief solely on the basis of the imposition of a sentence of life imprisonment, irrespective of the period of actual confinement, while under the latter, the basis for relief is the actual length of the incarceration, irrespective of the sentence.
Thus, under subdivision 2 of section 6 of the Domestic Relations Law and section 79-a of the Civil Rights Law, a final sentence to a term of imprisonment having a minimum as short as one year in prison[3] immediately entitles the stay-at-home spouse to treat the marriage as dissolved, so long as the sentence carries a maximum of life imprisonment. In such a case, the right of the stay-at-home spouse to treat the marriage as void or to have it declared void accrues at the moment that the sentence becomes final — possibly before even a single year of actual imprisonment has elapsed. However, under this early legislation, the stay-at-home spouse whose incarcerated spouse either was not finally sentenced or was *845 finally sentenced to a term other than life remained married, without recourse, even after years of actual physical separation from the incarcerated spouse. (1966 Report of Joint Legis Committee on Matrimonial and Family Laws, pp 30, 88.)
 To this type of situation the Legislature addressed itself in 1966 by the enactment of subdivision (3) of section 170 of the Domestic Relations Law. A one word amendment to this subdivision, drafted by the Joint Legislative Committee on Matrimonial and Family Laws, and enacted by chapter 700 of the Laws of 1968, made the purpose of this subdivision unmistakable:
"The grounds for divorce, newly added to Section 170 and which became effective on September 1, 1967, were deemed remedial
* * *
"Considerable controversy arose over the interpretation of the imprisonment ground for divorce. Present language [sic] of the law, 'confinement of the defendant to prison’ occasioned a multitude of varying constructions. This bill amends the imprisonment section by changing the language to read 'confinement of the defendant in prison’ [emphasis in original]. It is intended that the defendant be subjected to actual and physical incarceration for the requisite period of time [emphasis added]. The marriage, killed by separation, is the basis for divorce rather than the ignominy of having a convicted spouse.” (1968 Report of Joint Legis Committee on Matrimonial and Family Laws, pp 26-27.) Under subdivision (3) of section 170 of the Domestic Relations Law, actual physical incarceration for the statutory period of three consecutive years gives rise to the right to a divorce. If such incarceration has occurred, no more is required; the right to a divorce pursuant to subdivision (3) of section 170 is complete (Colascione v Colascione, 57 Misc 2d 199; see Short v Short, 57 Misc 2d 762, 764) and is unaffected by a reversal of the spouse’s conviction.[4]
*846 The issue presented, then, by plaintiffs divorce claim, is whether defendant’s more than four years of physical confinement between March 23, 1970 and August 1, 1974 included any three consecutive years of confinement in prison within the meaning of subdivision (3) of section 170 of the Domestic Relations Law.
 It has already been held that "jail time” which the law requires to be credited against a defendant’s sentence of imprisonment similarly constitutes time that the same defendant is confined in prison within the meaning of subdivision (3) of section 170. (Pergolizzi v Pergolizzi, 59 Misc 2d 1027.) In Pergolizzi, the evidence showed only that the defendant husband had served approximately two years in prison after sentencing; for the period of his incarceration prior to sentencing, however, the husband was entitled to credit for an additional 396 days of "jail time.” Applying subdivision (3) of section 170 to these facts, the court held that this additional year of "jail time” (Penal Law, § 70.30, subd 3), together with the two years of the spouse’s postsentencing incarceration in a Department of Corrections facility, entitled the stay-at-home spouse to a divorce. The decision in Pergolizzi is consistent with the rule that remedial legislation should be liberally construed to protect the interests of those persons for whose benefit it was enacted (McKinney’s Cons Laws of NY, Book 1, Statutes, § 321, p 491) — in the case of subdivision (3) of section 170 of the Domestic Relations Law, the stay-at-home spouse— and to advance the remedy which the Legislature has provided (McKinney’s Cons Laws of NY, Book 1, Statutes, § 95). The Legislature has had ample opportunity to alter the result reached in Pergolizzi, although eight amendments to other subdivisions of section 170 of the Domestic Relations Law have been passed since Pergolizzi, the Legislature has not once amended the subdivision under which Pergolizzi was decided. (See, generally, 11A Zett, Edmonds & Schwartz, New York Civ Prac, § 22.05[2].)
However, also with respect to the period preceding sentencing, defendant makes a further contention. On the basis of Matter of Kesselbrenner v Anonymous (33 NY2d 161), defendant claims that the period of his court-ordered commit *847 ment to Matteawan State Hospital (made, prior to conviction and sentencing, after a determination that he was not competent to stand trial), was not time during which defendant was confined in prison within the meaning of subdivision (3) of section 170 of the Domestic Relations Law. Clearly, however, Matteawan was a secure facility operated by the State Department of Correctional Services. Moreover, decisions under not only current subdivision 3 of section 70.30 of the Penal Law but also under former section 2193 of the Penal Law have held that commitment to Matteawan State Hospital prior to sentencing is "jail time” which must be credited against a later sentence of imprisonment. (People v Pugh, 51 AD2d 1047 [eight years of confinement in Matteawan State Hospital, after judicial determination that defendant lacked the mental capacity to be sentenced, credited as "jail time” under subdivision 3 of section 70.30 of the Penal Law]; Matter of Negro v Dickens, 22 AD2d 406 [decided under former section 2193 of the Penal Law].) The court therefore holds that, from March 23, 1970 through at least December 27, 1973, defendant was confined in prison[5] within the meaning of subdivision (3) of section 170 of the Domestic Relations Law, and that plaintiff is accordingly entitled to a divorce.
Alternatively, and even disregarding the period of defendant’s commitment to and confinement in Matteawan, plaintiff is entitled to a divorce on the basis of the period of over three consecutive years of confinement of the defendant between March 4, 1971 and August 1, 1974. The time which defendant was incarcerated in Auburn State Prison and in the Monroe County Jail after December 27, 1973, constituted time defendant was confined in prison within the meaning of subdivision (3) of section 170 of the Domestic Relations Law. This statute, unlike one of the alternatives which the Legislature considered and rejected, clearly is not limited in its *848 application to the incarcerated spouse sentenced to a prescribed minimum period of imprisonment and incarcerated for a shorter statutory period "pursuant to such sentencing.” (See Short v Short 57 Misc 2d 762, 763, supra.) In this, the Legislature recognized that the stay-at-home spouse whose partner is incarcerated prior to sentencing, or whose partner is incarcerated after his original sentence has been vacated on appeal, is no less alone than one whose partner is incarcerated pursuant to a sentence of specified duration. The bill rejected by the Legislature, moreover, would have required two rather than three years of actual incarceration. The longer period actually adopted by the Legislature is consistent with the Legislature’s rejection of any requirement that the full period of three consecutive years consist of incarceration "pursuant to” a single sentence of imprisonment.
As required by section 240-a of the Domestic Relations Law, the judgment of divorce shall contain a provision permitting plaintiff to resume use of her maiden name.

. See, generally, Matter of Smiley (36 NY2d 433 [appointment of counsel in matrimonial action not constitutionally required]); Cerami v Cerami (44 AD2d 890 [re earlier appointment of counsel for defendant in this action]).

. Long before the enactment of subdivision (3) of section 170 of the Domestic Relations Law, part of New York’s divorce reform legislation of 1966, other States had adopted legislation providing for the dissolution of marriages involving the actual confinement of a spouse in prison. (See 27A CJS, Divorce, § 23; 1966 Report of the Joint Legis Committee on Matrimonial and Family Laws, p 88.)

. In such a case, even though the spouse might be released from imprisonment after a relatively short period of confinement pursuant to a sentence having a maximum term of life imprisonment, the concomitant burden of life parole would persist. (But cf. Civil Rights Law, § 79-a, subd 4; result otherwise if life sentence carries minimum sentence of a single day of imprisonment.)

. Under subdivision (3) of section 170 of the Domestic Relations Law, it is neither the imposition of nor the finality of defendant’s sentence of imprisonment, but rather the length of defendant’s physical incarceration, which determines whether plaintiff is entitled to a divorce. Subdivision (3) of section 170, unlike subdivision 2 of section 6 of the Domestic Relations Law and subdivision 1 of section 79-a of the Civil Rights Law, affords the stay-at-home spouse no relief at all until three consecutive years of incarceration have elapsed (Short v Short, supra), and not until then does the applicable five-year Statute of Limitations (Domestic Relations Law, § 210) begin to *846 run. Accordingly, the reversal of a spouse’s criminal conviction has no bearing upon the outcome of a divorce action commenced pursuant to subdivision (3) of section 170 of the Domestic Relations Law. (Colascione v Colascione, supra [granting divorce after conviction reversed]; cf. People v Colascione, 22 NY2d 65 [reversing conviction].)

. An amendment made, not to the Domestic Relations Law, but to a completely unrelated section of the Correction Law, purports to define the term "state prison” as used in "any statute” so as to exclude Matteawan. Subdivision 4 of section 2 of the Correction Law, which contains this provision, is not a domestic relations statute, however, and there is absolutely no basis to believe that its enactment was intended to affect the law of domestic relations at all, much less the construction of the word "prison” as used in subdivision (3) of section 170 of the Domestic Relations Law. Repeals or partial repeals of earlier statutes, by mere implication, are not favored, and the court concludes that no repeal or limitation of subdivision (3) of section 170 of the Domestic Relations Law was intended by the later enactment of subdivision 4 of section 2 of the Correction Law. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 391.)