OPINION OF THE COURT
 

 Bellacosa, J.
 

 This declaratory judgment action raises the legal validity of a marriage entered into by a life-sentence inmate while in prison. We agree with the lower courts that such a marriage is void from inception because the Legislature’s declaration of civil death under Civil Rights Law § 79-a continues to impose a complete disability to enter into a valid marriage with an inmate during life-sentence incarceration.
 

 Plaintiff Donald Ferrin is serving a term of 20 years to life, imposed in April 1974. In December 1977, while being held at the Dutchess County Jail, Donald purported to marry Susan in the presence of the jail chaplain. Donald was later transferred to a correctional facility where he was permitted to participate with Susan in the Family Reunion Program (7 NYCRR 220.1).
 

 Some years later, Donald was transferred to his present place of incarceration and he again applied to participate in the Family Reunion Program. In August 1984, the Department of Correctional Services (DOCS) denied the application, stating that pursuant to Civil Rights Law § 79-a the Ferrin marriage was "not considered to be legal”.
 

 Donald and Susan Ferrin commenced this action seeking relief from that determination by a judicial declaration that they are validly married. The State moved for summary judgment and Supreme Court dismissed the Ferrins’ complaint. The Appellate Division modified the judgment technically to declare in favor of the State DOCS, stating that Ferrin could not legally marry and that estoppel was not applicable against the State; as so modified, that court affirmed (124 AD2d 265) and this court has granted leave to the Ferrins to appeal to our court. We now affirm.
 

 Plaintiffs eschew any constitutional challenge to the State’s authority to prohibit the marriage of an inmate serving a life sentence. Their claim rests solely on their asserted construction of Civil Rights Law § 79-a and related statutes as containing no prohibition of the kind at issue here. As a fall back argument, plaintiffs urge that the State should be estopped from challenging the validity of their marriage since it was solemnized by a chaplain at a public jail.
 

 
 *45
 
 Plaintiffs’ statutory argument starts with a concession that under Civil Rights Law § 79-a an inmate sentenced to life imprisonment is declared "civilly dead”. Plaintiffs argue that since the statute does not specify the particular consequences of civil death, courts have erroneously concluded that "civil death” nullifies a "lifer’s” legal ability to marry
 
 (see, e.g., Matter of Fitzpatrick v Smith,
 
 90 AD2d 974,
 
 affd for reasons stated below
 
 59 NY2d 916,
 
 cert denied
 
 464 US 963,
 
 reh denied
 
 464 US 1064). They also argue that the source of old case law authority determining that a civilly dead person is unable to marry is Domestic Relations Law § 6 (2), which allowed the spouse of a life-sentence inmate to "elect” to treat a marriage as "void”. Since under plaintiffs’ analysis Domestic Relations Law § 6 (2) was the root impediment to such marriages, the argument continues that its repeal in 1981 removed the precedential and analytical bar to a life-term prisoner entering into a valid marriage contract.
 

 Plaintiffs’ syllogism is derailed by examination of the legislative history of the 1981 amendments repealing Domestic Relations Law § 6 (2), and by ordinary statutory construction and application of the language of Civil Rights Law § 79-a itself. Prior to 1981, Civil Rights Law § 79-a read as follows: "1. Except as provided in subdivisions two and three, a person sentenced to imprisonment for life is thereafter deemed civilly dead; provided, that such a person may marry while on parole, or after he has been discharged from parole, if otherwise capable of contracting a valid marriage. Such capability shall be deemed to exist where the marriage of a person sentenced to imprisonment for life has been terminated by divorce, annulment, or subsequent remarriage of a former spouse. A marriage contracted pursuant to this section by a person while he is on parole, without prior written approval of the board of parole, shall be ground for revocation of the parole.” And Domestic Relations Law § 6 (2) provided:
 

 "§ 6. Void marriages
 

 "A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either * * *
 

 "2. Such former husband or wife has been finally sentenced to imprisonment for life; this exception shall not apply if the marriage with such former husband or wife was contracted pursuant to the provisions of section seventy-nine-a of the civil rights law”.
 

 
 *46
 
 Under these statutes, the validity of an
 
 existing lawful marriage
 
 became voidable when one of the partners to the marriage was sentenced to life imprisonment. The confusion, however, was as to whether the voidability was effected automatically, by operation of law, because of the civil death status or only upon express election of the noninmate spouse who wished also to be free of the marriage
 
 (Fuchs v Fuchs,
 
 104 Misc 2d 1143, 1144;
 
 Matter of Fein,
 
 51 Misc 2d 1012;
 
 Cerami v Cerami,
 
 95 Misc 2d 840;
 
 Matter of Lindewall,
 
 287 NY 347, 357;
 
 Brookman v Brookman,
 
 161 Misc 741;
 
 Jones v Jones,
 
 249 App Div 470,
 
 affd
 
 274 NY 574).
 

 To remove this confusion, Civil Rights Law § 79-a was amended and Domestic Relations Law § 6 (2) was repealed so that the validity of a marriage in existence at the time of sentencing was no longer affected by the imposition of a life sentence. The following sentence was added to Civil Rights Law § 79-a: "This section shall not be deemed to impair the validity of a marriage between a person sentenced to imprisonment for life and his spouse.” Thus, when a married person is sentenced to life imprisonment, the marriage is no longer automatically dissolved by virtue of the inmate’s civil death or by mere election of the free spouse; appropriate and ordinary legal action must be brought to successful conclusion to terminate such a marital relationship.
 

 According to the Sponsor’s Memorandum in support of the 1981 legislation, the purpose of the amendment was to "clarify the present law to insure that an
 
 already existing
 
 marriage of a person sentenced to life imprisonment is not automatically dissolved by the imposition of the sentence” (Sponsor’s Mem in support, Governor’s Bill Jacket, L 1981, ch 118 [emphasis supplied]). Additionally, the Memorandum by the Executive Director of the Law Revision Commission stated that the amendments were intended to "change present law by providing that a sentence of life imprisonment does not automatically dissolve a marriage” (Mem of Executive Director of Law Revision Commission, Governor’s Bill Jacket, L 1981, ch 118). These amendments were thus meant to address the validity of only marriages in existence at the time the life sentence was imposed. They had no independent effect on the legal principles or statutory applications affecting the validity of a marriage attempted by a civilly dead inmate after the life sentence had been imposed and begun to be served.
 

 Plaintiffs’ argument must also be examined under the plain
 
 *47
 
 language of Civil Rights Law § 79-a itself. To accept their main premise (i.e., being civilly dead under Civil Rights Law § 79-a does not affect a person’s capacity to marry) would nullify the meaning of the second clause in the statute which states: "provided that such a person [a civilly dead 'lifer’] may marry while on parole, or after he has been discharged from parole”. A rudimentary rule of statutory construction dictates that whenever practicable courts must give effect to all the language employed by the particular legislation
 
 (Matter of Brooklyn Union Gas Co. v Commissioner of Dept. of Fin.,
 
 67 NY2d 1036, 1039;
 
 Matter of Roballo v Smith,
 
 63 NY2d 485, 489;
 
 Matter of Albano v Kirby,
 
 36 NY2d 526, 530). In interpreting this statute we are bound to accept the Legislature’s deliberate retention in the statute of the
 
 parole
 
 clause which, in order to have meaning and purpose, compels the conclusion that civil death of an
 
 incarcerated
 
 lifer precludes marriage. Thus, under the terms of the concededly applicable statute, granting parolees previously sentenced to life imprisonment the right to marry can only have meaning if a general existing prohibition with respect to incarcerated lifers is operative.
 

 Plaintiffs’ estoppel argument fails because it is contradicted by recent cogent authority of this court
 
 (Scruggs-Leftwich v Rivercross Tenants’ Corp.,
 
 70 NY2d 849;
 
 Granada Bldgs. v City of Kingston,
 
 58 NY2d 705, 708).
 

 While there may be competing policy arguments and modern penological and societal reasons for ending this last significant vestige of civil death for lifers, these are matters which in these circumstances must be left to the Legislature to resolve. The plain statute and basic statutory construction principle bind this court.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, and Hancock, Jr., concur.
 

 Order affirmed, without costs.