THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN KEOUGH, Appellant.

Argued October 8, 1937; decided November 23, 1937.

*Maurice Edelbaum, Joseph I. Weissman, Harry G. Anderson* and *Benjamin Schifter* for appellant. It was reversible error for the trial court to receive the testimony of the People's experts inasmuch as the same was based upon facts which were not proved upon the trial. (*People v. Hawkins,* 109 N. Y. 408; *People v. Strait,* 148 N. Y. 566; *Cobb v. United Engineering Co.,* 191 N. Y. 475; *People v. Hill,* 195 N. Y. 16; 2 Wharton's Crim. Ev. [11th ed.] § 993; *United States v. Faulkner,* 35 Fed. Rep. 730; *Davis v. State,* 96 Ark. 7; *Flanagan v. State,* 106 Ga. 109; *Brown v. Ins. Co.,* 65 Mich. 315; *State v. Peel,* 23 Mont. 358; *Bullock v. New York Life Ins. Co.,* 182 Minn. 192.) It was reversible error for the trial court to refuse to permit the defendant to show the facts upon which the People's experts based their testimony. (*People v. Faber,* 199 N. Y. 256; *People v. Youngs,* 151 N. Y. 210.)

*William F. X. Geoghan, District Attorney (Henry J. Walsh* of counsel), for respondent. The testimony of the People's alienists was properly received in evidence. (*People v. Hawkins,* 109 N. Y. 408; *People v. Strait,* 148 N. Y. 566; *People v. Faber,* 199 N. Y. 256; *People v. Youngs,* 151 N. Y. 210; *People v. Taylor,* 138 N. Y. 398; *People v. Hoch,* 150 N. Y. 291; *People v. Ferraro,* 161 N. Y. 365; *People v. Farmer,* 194 N. Y. 251; *Brotherton v. People,* 75 N. Y. 159; *People v. Spencer,* 179 N. Y. 408; *People v. Taylor,* 138 N. Y. 398.)

FINCH, J. This is an appeal from a conviction of murder in the first degree. The defendant, another man, and two women entered a " speakeasy " operated by the deceased James Heaney at eleven-thirty P. M. on June 18, 1932. They remained there for several hours partaking of drinks. At about one A. M. the defendant and one of the women left the table and went to the bar. Heaney refused to allow the woman to drink at the bar, and she returned tc the table. Heaney then went over and spoke to her, and while he was speaking the defendant returned to the table and spat in the woman's face and threw her pocketbook at her. Heaney protested against conduct of this kind. Shortly thereafter the defendant and the other man left the " speakeasy;" five minutes later the two women left. About fifteen minutes later the defendant, accompanied by three other men, returned, the defendant and one of the men known as " Sam " carrying guns. The defendant asked for Heaney. Upon learning that the defendant was present with a gun in hand, Heaney and Stewart, a waiter, ran toward the stairway, but when they saw the man called Sam, armed, at the head of the stairway, they ran into the women's lavatory and closed the door. The defendant called on Heaney, in vile language, to emerge. He attempted to force his way into the lavatory, but Stewart and Heaney leaned against the door, preventing his entrance. Finally he threatened to shoot through the door if Heaney did not come out, and after a lapse of a minute or two a shot was fired through the door, killing Heaney. Stewart was then pulled out of the lavatory by the defendant, who still had the gun in his hand which, according to Stewart, was still smoking. Nobody else was near the lavatory door. A few minutes later the defendant and Sam ran down the stairs into the street and disappeared. What happened to the other men does not appear in this record.

The defendant was not captured until a year later. At that time a lunacy commission, consisting of two

laymen and Dr. Jules M. Nova, was appointed, which reported that the defendant was insane at the time of their examination, but was sane at the time of the commission of the crime. Notwithstanding this report of the commission, a trial was commenced, but after the second day another lunacy commission, consisting of three alienists, including Dr. David Corcoran, was appointed, which also reported that the defendant was insane, and he was committed to a State hospital for the insane. He was confined therein for three years, when a writ of habeas corpus was sued out, but the writ was dismissed when the hospital authorities reported that he was not entirely cured. In June, 1936, the defendant was discharged by the hospital as cured, and returned to stand trial.

The main defense relied on at the trial was that the defendant was insane at the time of the commission of the crime. There was evidence that when the defendant was sixteen years old he was indicted as an accomplice in a felony murder, but was permitted to plead guilty of manslaughter in the first degree, and was given a sentence of from ten to twenty years. After serving five years he was transferred on the recommendation of a physician from Sing Sing to Dannemora. Just why this transfer was made does not appear, although counsel states that he became mentally deranged. Various members of his family testified to irrational acts of the defendant after he returned from prison, but they admitted that at the time they thought he acted strangely but did not believe him insane.

Dr. Nova, of the first lunacy commission, and Dr. Corcoran, of the second lunacy commission, testified, over the objections of counsel for the defendant, that, in their opinion, based upon personal observation of the defendant and upon testimony of his mother and sister before the lunacy commissions, the defendant was sane at the time of the commission of the crime, although he was insane

at the time they examined him. The admission of this evidence based upon statements of third parties constituted material error requiring a reversal and a new trial.

Experts called to testify concerning the sanity of the defendant in a criminal case are limited to opinion based upon proper hypothetical questions, and opinion based upon personal observation and examination of the defendant. (*People* v. *Lake*, 12 N. Y. 358.) Opinions based in whole or in part upon statements other than those of the person whose sanity is in question related to the expert, as in the case at bar, are not admissible. (*People* v. *Hawkins*, 109 N. Y. 408; *People* v. *Strait*, 148 N. Y. 566; *People* v. *Hill*, 195 N. Y. 16, 19; Smoot on the Law of Insanity, § 570; 2 Wharton's Crim. Evidence [11th ed.], § 993.) The basis of this rule is to be found in the following sentence from *People* v. *Strait* (*supra*), wherein the court says: " The witness was an expert on the diseases of the mind, but he was not an expert on determining the facts, where such facts had to be obtained from the statements of others " (p. 570). The ultimate decision as to the sanity or insanity of the defendant rests with the jury, and in general must be based upon facts presented before it and not opinions. An exception, however, is made in the case of experts because " The opinion of the witness may be based upon facts so exclusively within the domain of scientific or professional knowledge that their significance or force cannot be perceived by the jury, and it is because the facts are of such character that they cannot be weighed or understood by the jury that the witness is permitted to give an opinion as to what they do or do not indicate." (*People* v. *Youngs*, 151 N. Y. 210, 218.) Even where the opinion of the expert is based upon personal examination, he may be required to state the circumstances of his examination and the facts, symptoms or indications upon which his conclusion is based, before giving his opinion to the

jury; or this information may be elicited on cross-examination. Where his opinion, however, is based upon the statements of third persons not in the presence of the jury, the latter not only is in ignorance of what these statements contain, but also has no opportunity to pass on the truth and probative force of the statements or to determine whether the statements were not concocted to produce a desired result. For this reason it is not permissible to ask an expert for an opinion based upon all the testimony in the whole case, since this would involve passing upon the credibility of witnesses and drawing inferences from their statements. (*People* v. *McElvaine*, 121 N. Y. 250.) The rule limiting opinions of experts aside from hypothetical questions, to those based solely on observation and an examination of the defendant, was violated in the case at bar. (*People* v. *Hill*, 195 N. Y. 16, 19.) Dr. Nova testified as follows:

" Q. On what did you base your finding that he was sane at the time of the commission of the crime, if no eye-witness testified before your commission as to what happened on that night?

" A. A history of the actions, reactions, conduct, language of the individual, from the mother and the sister, from the time as far back as they could remember up to the present time, or the time that we had examined him — examined them, rather    *    *    *

" Q. Now, did you take into consideration the testimony of the mother and the sister when you found that he was sane at the time of the commission of the crime?

" A. Yes."

Dr. Corcoran, who sat on the lunacy commission which heard ten witnesses, including the father as well as the mother and sister of the defendant, testified as follows:

" Q. Doctor, from your experience, are you able to express an opinion from the hearings that you held on this commission and the witnesses that you examined, including the defendant, are you able to express an opinion as

to whether or not the defendant, in your opinion, was sane or insane on the 19th of June, 1932?

" A. I am."

The error was not cured even though both the mother and the sister testified at the trial. The sister did not testify fully, and, moreover, on cross-examination counsel for the defendant was not permitted to interrogate one of the experts with respect to the nature of the testimony of the mother and the sister upon which his opinion was based. An attempt by counsel for defendant to place in evidence a transcript of the testimony taken before the lunacy commissions also was unsuccessful. Thus the jury, although informed that the experts relied upon statements of fact by the mother and the sister and others, who appeared before the lunacy commission, never were apprised of the nature of these statements upon which the expert relied in reaching the conclusion that the defendant was sane at the time of the commission of the crime. Thus the defense, kept in ignorance of which statements were relied upon, never had a proper opportunity to cross-examine the witnesses. Of the committing of the shooting by the defendant no doubt remains. Whether the defendant was sane or insane at the time presents the close issue in the case. Upon this issue the error complained of was material and vital.

Since this error requires reversal and a new trial, it becomes unnecessary for us to consider the other alleged errors raised by the brief of the defendant.

The judgment of conviction should be reversed and a new trial ordered.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Judgment of conviction reversed, etc.