Dye, J. (dissenting).
In my view the evidentiary ruling pointed to as a basis for reversal was entirely proper when considered in context. Up to the time the ruling was made, the examination of the defendant’s expert medical witness had been for the purpose of eliciting his opinion as to the mental state *516 of a hypothetical man under the evidentiary facts and circumstances shown and which did not rest on the personal knowledge of the witness. Thus, the objection to the framed question was properly sustained.
The defense was not deprived of its proof. In the question that immediately followed, the defendant’s medical witness stated that at the time a person had pathological intoxication “ I would say he is insane ”. What more was needed to raise the issue is difficult to understand.
The hypothetical method of eliciting expert opinion has long been approved. In most instances it is preferable, affording as it does a basis in fact established by the proof. It is only then that a reviewing court may be sure that the medical expert and the jury are dealing with the same factual situation. The trial court ruling was consistent with this form of proof.
As the majority points out, a physician who has conducted an examination of a person whose sanity is at issue may state directly his opinion as to the person’s condition without first stating his premises (People v. Faber, 199 N. Y. 256, 266). Even so, we there made it clear that it is the better practice to require the witness to state the circumstances of his examination and the facts upon which his conclusions are based, before permitting an opinion to be given to the jury (People v. Keough, 276 N. Y. 141 to the same effect). This departure from the usual rules as to the examination of experts was heretofore permitted because the medical expert by examining the subject supplies himself with the necessary premises which are usually matters and facts of such a character that their significance or force might not be perceived by the jury. That exception should not give license to examine a doctor directly where his opinion does not rest entirely on the results of his own personal knowledge, as developed by the examination. Where, as here, a fundamental premise, drinking, is not within the personal knowledge of the witness we feel that the hypothetical method is preferable (2 Wigmore, Evidence [rev. ed], § 678). Furthermore, it was certainly within the discretion of the Trial Judge to require that there first be a statement of the facts upon which the doctor relied.
We agree that evidence relating to a defendant’s ability to understand the charge should not be in the case (Code Crim. *517 Pro., § 662). Even so, it does not follow that its presence is so prejudicial as to require a reversal. Such evidence might be prejudicial where the defense seeks to establish a continuing course of insanity, the inference being that a finding of ability to understand is inconsistent with a finding of insanity. Where, as here, the defense is in the nature of temporary insanity that inference works no harm, since the jury must be said to understand that there is no allegation of any continuing course of mental instability, but only temporary flights. Thus, the inference at best supports only what the testimony already indicates.
To sum up, none of the errors specified are so prejudicial as to require or warrant a reversal. Indeed, the issue of temporary insanity was submitted to the jury upon a proper and adequate charge, a charge which counsel for the defense considered ‘ ‘ fair ’5 and to which no exception was taken other than to call the court’s attention to a slight misstatement of fact that Dr. Winkler’s pretrial examination of the defendant had taken place a year and a half after the arrest and not ‘6 shortly ’ ’ after, as stated by the court, which the court promptly instructed the jury was for them to resolve.
The trial was long. The proof of guilt was overwhelming and no effort was made to controvert it. The various deviations occurring in the course of the examination of the medical witnesses on the infrequent and little known aspects of pathological intoxication, as a type of temporary insanity, were of the kind that frequently arise in the course of a long, drawn-out criminal trial and, taken separately or collectively, do not rise to the level of prejudicial error requiring a new trial. The issue of temporary insanity was left to the jury and their answer, implicit in the verdict of guilty, should not be disturbed.
The judgment of conviction should be affirmed..
Judges Fuld, Van Voorhis, Burke and Foster concur with Judge Froessel ; Judge Dye dissents in an opinion in which Chief Judge Desmond concurs.
Judgment of conviction reversed, etc.