Rabin, J.
Defendant Gary Lee Stone was convicted by a jury of the murder of his wife. His sole defense was insanity. His principal contention upon appeal is that the expert opinion of Dr; Richard Jaenike, a court-appointed psychiatrist, as to defendant’s sanity at the time of the commission of the crime, was improperly admitted into evidence. The defendant claims that the doctor’s opinion was based in part upon interviews with individuals other than defendant, some of whom did not testify at trial. It is argued that the rule in People v. Keough (276 N. Y. 141) requires reversal of the conviction because the doctor’s opinion was not based solely upon his personal observation and examination of the defendant and facts in evidence. We have concluded that the trial court properly admitted Dr. Jaenike’s expert testimony and that the conviction should be affirmed.
At trial, three psychiatrists testified: Dr. Pollack for the defendant and Drs. Jaenike and Lynch for the People. Of these, both Pollack and Jaenike interviewed individuals who knew the defendant but who did not testify at trial. Dr. Jaenike, a psychiatrist with over 40 years of experience, testified that between November 4, 1970 and May 25, 1971, he interviewed the defendant six times, but that the defendant refused to talk about his wife’s death or the circumstances surrounding it.
*72 After Ms last interview with the defendant on May 25, the doctor spoke to 12 other people including defendant’s friends, 2 police officers who were present when defendant signed a confession three days after the crime, 2 doctors and others acquainted with the defendant. Four of these 12 did not testify at trial.
Some detail is required in describing the challenged testimony. On direct examination by the prosecution, Dr. Jaenike was asked a hypothetical question which posited certain facts regarding commission of the crime. The doctor was asked his opinion of defendant’s capacity at the time of the crime to appreciate the nature and consequences or the wrongfulness of the hypothesized conduct, based not only upon his interviews with the defendant but upon his conversations with others as well. Defense counsel objected on the ground that the doctor’s conversations with persons who had not testified in the case could not be included in his evaluation of the defendant’s sanity. The trial court sustained the objection.
The prosecution then posed the hypothetical again, this time asking for the doctor’s opinion based upon matters in evidence and upon Ms observations of and interviews with the defendant. "Defense counsel objected on the ground that it was too difficult for the witness to isolate his opinion to the sources specified. The court overruled the objection stating that counsel could make this inquiry on cross-examination. Dr. Jaenike then responded that in his opinion defendant “ possessed the substantial capacity to appreciate the wrongfulness of his conduct ”.
Thereafter, during lengthy cross-examination, defense counsel questioned the extent of the doctor’s reliance upon the 12 additional interviews. The doctor stated: “ I wanted the information from the outside to perhaps help me to finally formulate my final opimon.” “ There was some uncertainty in my mind.” Under further cross-examination, the doctor stated: “ I needed this information.” Defense counsel then moved to strike the doctor’s opinion. After the court ordered the jury to leave the courtroom, defense counsel stated he was moving to strike because Dr. Jaenike “ had access or did use the information * * * which would be within the hearsay rule ”, The court then allowed the District Attorney to conduct *73 an examination during which the doctor stated: “ I needed more information which is usually necessary in all the people that I see or examine that I need confirming or non-confirming information, data to substantiate what I think * * * It didn’t change my opinion but I needed more information because I alone cannot in most cases make just an independent study and isolate the individual from the rest of the people who know him.” (Emphasis added.)
The court, sua sponte, then asked the doctor whether he would be able to give an opinion of defendant’s mental condition with a reasonable degree of medical certainty, “ without talking to the people that you have named, without any interviews with those people * * * [but] [biased solely on your interviews with the defendant and hospital record, the portion that is in evidence.” Dr. Jaenike responded: “ Yes, I could give an opinion but I wouldn’t have been as certain as I was after my interviews with the other data.” The court then denied defendant’s motion to strike, stating: “ It will go to the weight that that jury wants to give it.” (Emphasis added.) Defense counsel excepted to the ruling and the court ordered the jury returned to the courtroom. Then, in the presence of the jury, defense counsel continued his cross-examination and asked Dr. Jaenike whether he “ as an intelligent, competent psychiatrist felt [it]was necessary ” to seek the additional background data “ before [he] could render a medical opinion with reasonable medical certainty as to Mr. Stone’s condition as of August 30th or 31st, 1970 [the date of the killing] ”. The doctor responded: “ No, I don’t think I could have done it, no, sir.”
Defendant argues that Dr. Jaenike’s opinion was based, in substantial part, upon the extrajudicial statements of the people he spoke to after his interviews with the defendant. We find little, if any, support in the record for this assertion. The doctor repeatedly stated during his testimony that the additional interviews were conducted to “ crystalize ”, “ substantiate ”, “ finalize ” and “ confirm ” the view he had of defendant’s state of mind as a consequence of his six interviews with the defendant. We note that the Trial Judge was very careful to satisfy himself that an independent, legally competent basis existed for the opinion in the doctor’s interviews with the defendant and in the medical records in evidence. *74 Once reasonably assured of a legally competent basis for Dr. Jaenike’s testimony, the court did not abuse its discretion in admitting the opinion in evidence, subject to challenges to its weight on cross-examination. In addition, the court in its charge to the jury regarding expert testimony, instructed among other things, that the jury could accept such testimony “ if you find that [it] is based on underlying facts which have been established and the expert knew what he was talking about.”
The defendant argues, however, that the doctor’s statement on cross-examination — that as an intelligent, competent psychiatrist he did not think he could have rendered a medical opinion as to defendant’s mental condition with a reasonable degree of medical certainty without conducting the additional interviews — renders his opinion inadmissible. Defendant relies upon the “ rule ” of People v. Keough (276 N. Y. 141, 146, supra) “ limiting opinions of experts aside from hypothetical questions, [i.e., facts' already in evidence] to those based solely on observation and an examination of the defendant ”. (Emphasis added.)
Since the jury ultimately decides the sanity or insanity of the defendant, the purpose of the Keough rule is to aid the jury in its search for the true determination by assuring that the facts upon which an expert opinion is based are before it. The assumption is that the jury is then better able to evaluate the relative worth of the opinion (People v. Samuels, 302 N. Y. 163, 172) and to determine whether the opinion is “ concocted to produce a desired result ” (People v. Keough, supra, at p. 146). At the same time the rule is designed to allow cross-examination into the basis of the opinion. (People v. Cerami, 33 N Y 2d 243, 249.)
In cases like the present, however, the limitations of the rule are apparent, for its rigid application discourages the professionally responsible psychiatrist from exploring sources of background information relevant and necessary to a sound medical opinion as to the defendant’s sanity. The effect is to render the more thorough and thoughtful opinion inadmissible because not based exclusively upon observations of the defendant and facts in evidence. (See, generally, Rheingold, The Basis of Medical Testimony, 15 Vanderbilt L. Rev. 473, 526 *75 et seq.; Diamond & Louisell, The Psychiatrist as an Expert Witness, 63 Michigan L. Rev. 1335, 1350-1354.) Where, as here, the court has reasonably assured itself of a legally competent basis for the psychiatrist’s opinion, a mechanical application of the Keough rule is to be avoided. “ Making available to our triers of fact the information available from the arts and sciences remains one of the continuing challenges of the law.” (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4515.03.)
The Legislature has recognized the importance of adequate access by the jury to the psychiatrist’s skill and knowledge. The strictness of the Keough rule has been modified by CPLR 4515[1] (People v. DiPiazza, 24 N Y 2d 342, 351), and CPL 60.55[2] (formerly Code Crim. Pro., § 398-b) (cf. Lee v. County Ct. of Erie County, 27 N Y 2d 432, 441). The latter statute, which deals specifically with psychiatric testimony in cases like the present, represents an effort by the Legislature to strike a balance between the potentially conflicting factors we have mentioned — the medical soundness and legal admissibility of a psychiatrist’s expert opinion. CPL 60.55 represents a legislative recognition of the importance of adequate psychiatric opinion (Lee v. County Ct. of Erie County, 27 N Y 2d 432, 441, supra).
*76 The modification of Keough, particularly by virtue of CPL 60.55, allows the psychiatrist’s expert opinion to be admitted where the opinion is substantially, though not exclusively, based upon observation and examination of the defendant and facts in evidence. The purpose for which the psychiatrist, is called as an expert witness in cases like the present is to render his opinion. In evaluating the worth of that opinion, the jury should be informed of his sources and how he evaluated those sources in arriving at his conclusion. On cross-examination, the validity of his reasoning process may be probed and any “ shaky factual basis ” of the opinion exposed. (Cf. 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4515.03.) The jury may then take the opinion for what they think it is worth. (See, generally, Dieden & Gasparich, Psychiatric Evidence and Full Disclosure in the Criminal Trial, 52 California L. Rev. 543.)
Having explored the factual basis for the expert psychiatric opinion, and found it legally competent, the court in this case correctly determined that the existence of further support for the opinion in medically sound but legally hearsay evidence would not affect its admissibility, but only its weight. (Cf. 3 Wigmore, Evidence [Chadbourn rev.], § 688; McCormick, Evidence, § 15.) Dr. Jaenike testified in response to the court’s questioning that he was able to express his opinion based upon legally competent evidence with “ reasonable certainty That he independently pursued other sources to achieve a greater degree of professional certainty did not defeat admission of his testimony. This is particularly so where, as here, the doctor’s reliance, if any, upon the extrajudicial statements was slight, and where the third-party sources served only to confirm the opinion reached as a result of the psychiatrist’s interviews with the accused. The.doctor was thoroughly cross-examined; the sources he appealed to and the process by which he reached Ms opinion were effectively exposed. We also note that there was more than sufficient evidence in this record from which a jury could conclude that the defendant was sane, able to premeditate the crime and intend to kill his wife.
We have considered the defendant’s other contention on appeal and find it without merit.
*77 Accordingly, the judgment of conviction should he affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Stevens concur.
Order affirmed.

. CPLR 4515 provides: “ Unless the court orders otherwise, questions calling for the opinion of an expert witness need not be hypothetical in form, and the witness may state his opinion and reasons without first specifying the data upon which it is based. Upon cross-examination, he may be required to specify the data and other criteria supporting the opinion.”

. CPL 60.55 provides: “Rules of evidence; psychiatric testimony in certain cases. When, in connection with a defense of mental disease or defect, a psychiatrist who has examined the defendant testifies at a trial concerning the defendant’s mental condition at the time of the conduct charged to constitute a crime, bé must be permitted to make a statement as to the nature of the examination, the diagnosis of the mental condition of the defendant and his opinion as to the extent, if any, to which the capacity of the defendant to know or appreciate the nature and consequence of such conduct, or its wrongfulness, was impaired as a result of mental disease or defect at that time. The psychiatrist must be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion, and may be cross-examined as to any matter bearing on his competency or credibility or the validity of his diagnosis or opinion.” (Emphasis added.)