Chief Judge Breitel.
Defendant appeals from a conviction for murder (Penal Law, § 125.25, subd. 1) after a jury trial and a sentence from 20 years to life imprisonment.
An issue is whether an expert may base his opinion on an out-of-court written statement of a witness who testified at the trial. Also presented is the admissibility of a statement and re-enactment of the crime by a defendant, obtained in the absence of counsel, after a court order authorizing a defendant’s removal from county jail for the purpose of assisting the police investigation in this case.
There should be an affirmance. A prosecution psychiatrist may, in part, base his opinion that a defendant was criminally responsible upon a prior out-of-court written statement of a trial witness. Assuming that defendant’s statement. and reenactment were obtained in violation of the right to counsel, its introduction, at a trial confined to the insanity defense, was harmless error.
The evidentiary facts of the killing are undisputed. Defendant, aged 20, and others were members of a group self-styled as *457 “God’s Gifts” who “hung out” at a shopping center in Huntington in Suffolk County. To steal from his home, defendant and one Dan Mace visited an acquaintance, the deceased victim Lawrence Fitzgerald. Fitzgerald, aged 13 and suspended from school, admitted defendant and Mace. As part of his plan defendant decided to get Fitzgerald “high” and sent him to purchase glue. Upon his return, Fitzgerald and defendant began “sniffing” glue. Later, defendant telephoned a member of the group, Patricia Bérglund, and asked her to bring an automobile to the Fitzgerald home. Patricia, with her infant child, and her friend Rosemary Knox, who drove the automobile, picked up Mace, Fitzgerald and defendant, and later one Clifford Graebe. They all drove to an uninhabited partially-wooded area of Huntington.
Upon arrival, defendant, Patricia, and Fitzgerald left the car and walked down a path. At a sandpit, out of view of the others, defendant, in the presence of. Patricia, struck Fitzgerald on the head with a cement block. Because the victim was alive and actively resisting, defendant stabbed him several times with a carving knife stolen from the Fitzgerald home. He then again struck the boy on the head with the cement block.
Defendant, with Patricia’s help and that of Graebe, who had now arrived at the sandpit, covered the body with brush. Defendant, after throwing the knife away, and the two others returned to the car. There defendant told the rest of his companions that he had killed Fitzgerald. The party drove off and eventually went their separate ways.
The crime, the facts of which were never in contention, is almost unmatched in the annals. Perhaps the most bizarre is the only evidence of motive ever developed: defendant was hoping to elevate his status as a criminal and needed a test run to see if he had the professional capacity to kill a human being, if the need should arise in gome future contemplated activity. Oddly, the crime was resolved simply, but not as gorily, as befit the mentality which had conceived its design.
The body was found by a passerby. The ensuing police investigation, pinpointed by information volunteered by Rosemary Knox, led to defendant, by then in the county jail serving a sentence on an unrelated charge. Defendant agreed to speak with the police. Before the interrogation he was advised about, *458 and expressly waived, both his privilege against self incrimination and right to counsel. During the interview with a Detective Halverson, defendant gave a complete, voluble, and inculpatory account of the crime.
The next day Detective Halverson obtained a court order directing defendant’s release to the officer’s custody to revisit the scene of the crime. Defendant signed a written statement agreeing to assist the police. During the unsuccessful search for the knife defendant “walked through” the crime and was then returned to the county jail. After again being given the requisite preinterrogation admonitions defendant again waived his rights and signed a seven-page statement written by Detective Halverson.
At trial, legal insanity was the only defense. Defendant testified that he had taken mescaline before visiting Fitzgerald. According to defendant, when he killed the victim he was hallucinating and believed he was killing a giant grasshopper. Defendant also testified to extensive drug use, past criminal and other bizarre conduct, and family difficulties, especially with his father. A defense psychiatrist offered his opinion that defendant was legally insane.
In rebuttal, the prosecution offered the testimony of a psychiatrist, Dr. Harold Zolan. He concluded that defendant was legally sane, basing his opinion, inter alia, on the written statement of Patricia Berglund.
The defendant was found guilty.
Recently, in People v. Stone (35 N Y 2d 69, 74-75), the court held that a psychiatrist, after rendering a legally competent opinion, could further support that opinion by reference to medically relevant, albeit hearsay, evidence. The hearsay in Stone consisted- of interviews, by the psychiatrist, with 12 persons, including defendant’s friends and acquaintances, two police officers present when defendant signed a confession, and two physicians. Four of the persons interviewed did not testify at the trial.
In the present case, the prosecution psychiatrist, Dr. Zolan, interviewed defendant for three hours. He also examined a psychologist’s report about defendant when aged seven, other psychiatric and medical reports, defendant’s written confession, and written statements of four of the persons involved in vary *459 ing degrees in the crime. Only one of the last four persons, Dan Mace, did not testify at the trial.
Dr. Zolan admitted on cross-examination that his opinion was, in part, based upon the statement of Patricia Berglund. She had testified at the trial and was subjected to extensive cross-examination. At the outset of her cross-examination, defense counsel was given her written statement relied upon by Dr. Zolan. Thus there was full opportunity to cross-examine the witness on her prior statement.
During Dr. Zolan’s cross-examination defense counsel was offered, but refused, an opportunity to reread Patricia’s statement and to inquire about any difference between it and her trial testimony bearing oh Dr. Zolan’s opinion. Of course, the jury had the benefit of the direct and cross-examination of Dr. Zolan and Patricia Berglund. Under these circumstances, it is difficult to perceive any prejudice to defendant, and none has been shown.
Defendant moved to strike Dr. Zolan’s testimony because of the partial reliance on Patricia’s out-of-court statement by the prosecution psychiatrist. The motion was correctly denied.
True, at one time the courts in this State had prohibited an expert from expressing an opinion based upon material not in evidence (see People v. Samuels, 302 N. Y. 163, 172; People v. Keough, 276 N. Y. 141, 146). More recently, however, in People v. DiPiazza (24 N Y 2d 342, 351), the court held that a psychiatrist could, in giving his opinion, rely, in part, upon pretrial psychological and medical tests and examinations never introduced in evidence. Notably, and as already observed, the reasoning of the court, in People v. Stone (35 N Y 2d 69, 74-75, supra), arguably suggested that a psychiatrist might give a legally competent opinion without reliance exclusively upon observation of the defendant and facts in evidence.
Both the Stone and DiPiazza cases reflect to some degree a policy which would allow an expert to base his opinion on material not in evidence, provided the data relied upon is of the kind ordinarily accepted by experts in the field (see Proposed Federal Rules of Evidence, rule 703; see, generally, Rheingold, Basis of Medical Testimony, 15 Vand. L. Rev. 473, 494-514, 527-531; McCormick, Evidence [1st ed.], § 15, at p. 33). The policy, however, in a proper case must yield to a defendant’s right to confront the witnesses against him.
*460 The right to confront witnesses in a criminal case is not one without narrow and cautious exceptions. The book entries and public records rules, available on the civil side, are also available on the criminal side (People v. Foster, 27 N Y 2d 47, 52; People v. Semenza, 221 App. Div. 79, 81; People v. Nisonoff, 293 N. Y. 597, 602-604; cf. People v. Burgess, 244 N. Y. 472, 479-481; People v. Reese, 258 N. Y. 89, 96). Statements made by coconspirators in furtherance of the conspiracy, even if not truly verbal acts but assertions of fact, are generally admissible (see People v. Ryan, 263 N. Y. 298, 305; People v. Davis, 56 N. Y. 95, 103), Dying declarations have long been admissible in the criminal case (People v. Corey, 157 N. Y. 332, 347-348; Mattox v. United States, 156 U. S. 237, 243-244). Some of the varieties of out-of-court spontaneous declarations, loosely-dubbed as part of the res gestae, have also been allowed in criminal eases (see, e.g., People v. Del Vermo, 192 N. Y. 470, 483-488). The limited admissibility of a codefendant’s confessions on a joint trial also suggests a parallel of the problem, nafnely, admissibility if the. confessant takes the witness stand (People v. Anthony, 24 N Y 2d 696, 702-703; Nelson v. O’Neil, 402 U. S. 622, 626-630). These departures from a literal application of the confrontation rule are illustrative (see, generally, McCormick, Evidence [2d ed.], 60-*607).
Allowing an expert to base, in part, his opinion on otherwise legally incompetent hearsay of a person he has not interviewed, is conditioned on the hearsay declarant testifying at the trial. The significance of the requirement, that the person, whose statement has been used by the expert, testify at the trial, is obvious. The quality and content of the statement is exposed to cross-examination upon the trial and all of the evils of hearsay are obviated. This is especially so if, as here, the statement was available to defense counsel during cross-examination of the expert or if the hearsay declarant testifies directly or on recall after the expert’s cross-examination.
Juxtaposing the Stone case and the present case offers two exceptions to the prohibition for which the Samuels and Keough cases once stood. The psychiatrist may rely on material, albeit of out-of-court origin, if it is of a kind accepted in the profession as reliable in forming a professional opinion. As in the Stone case, it is important that the expert witness distinguish between *461 what part of his investigation he relied upon in forming his opinion and upon what part he did not rely. He may also rely on material, which if it does not qualify under the professional test, comes from a witness subject to full cross-examination on the trial. This is not to say that a case would never arise under either exception where it would be unjust to allow liberal use of out-of-court material. An example might be where the out-of-court material is more probative of “guilt” (not denied in this case), than it is of defendant’s mental condition.
Defendant also contends that proof of his “re-enactment” of the crime and a subsequent confession were obtained in violation of his right to counsel, attaching upon the court-ordered “removal” from the county jail.
Arguably, the issuance of a court order of removal is not the type of formal proceeding requiring the presence of counsel, thus far considered in cases raising the right to counsel (cf. People ex rel. Menechino v. Warden, 27 N Y 2d 376, 383; People v. Ianniello, 21 N Y 2d 418, 424-426, cert. den. 393 U. S. 827; Coleman v. Alabama, 399 U. S. 1, 7-10; CPL 120.10, issuance of arrest warrant; CPL 630.10, 630.20, production of witnesses confined in institutions; but cf. A. L. I., Model Code of Pre-Arraignment Procedure [Tent. Draft, 1974], § 170.3, subd. [2], par. [j]). On the other hand, a court-ordered removal of defendant, who was unquestionably a “target” of a police investigation, is sufficiently “judicial” in nature, not unlike arraignment or the issuance of an arrest warrant, so that a right to counsel exists at “critical stages” held after that order is issued (see People v. Blake, 35 N Y 2d 331; People v. Waterman, 9 N Y 2d 561, 565-566; see, also, Kirby v. Illinois, 406 U. S. 682, 689-690; Massiah v. United States, 377 U. S. 201, 205-207).
Whether the right to counsel after arraignment may be waived by a defendant in police custody in the absence of counsel, as was here attempted, is a question which has not been met with any uniform response (compare, e.g., People v. Vella, 21 N Y 2d 249, 251; United States v. Wade, 388 U. S. 218, 237, with People v. Lopez, 28 N Y 2d 23, 25-26, cert. den. 404 U. S. 840).
As suggested, the issues are complex and need not be resolved because neither the confession nor the re-enactment contributed to the conviction. The defendant did not seriously contest that his act caused Fitzgerald’s death. The “ re-enactment ” and *462 defendant’s written confession were, in substance, no different than his trial testimony, his oral confession to the police, and the testimony of Patricia Berglund. Rosemary Knox also testified that defendant admitted the killing.
The only issue was defendant’s sanity and the allegedly inadmissible evidence played no role in the jury’s resolution of that issue. Indeed, defense counsel, himself, offered an additional inculpatory statement of defendant made to Detective Halverson, never referred to by the officer in his direct testimony. This statement described defendant’s return to the Fitzgerald home the morning following the crime, when he stole various items of personal property. Defendant also introduced photographs of the “ re-enactment ” as well as the defendant’s signed statement agreeing to accompany and assist the police in their search for the weapon. Apparently, the defense theory was that the more the jury knew about the bizarre crime, the more likely that it would return a verdict of not guilty by reason of insanity.
The situation here is distinguishable from that in Harrison v. United States (392 U. S. 219, 222-226). In the Harrison case the Supreme Court reversed a conviction based upon defendant’s inculpatory testimony at a prior trial, testimony which had been “ tainted ” by the introduction of inadmissible confessions. Defense counsel’s strategy in this case may have been dictated not by the introduction of any inadmissible evidence but by a realistic appraisal of the overwhelming evidence against defendant, apart from his challenged confessions and re-enactment.
That the prosecution psychiatrist had also read the challenged confession before testifying requires no different result. The psychiatrist had interviewed defendant for more than three hours, examined a psychological report about defendant when he was seven years old, examined a 1971 psychiatric report and two other medical reports, and read the statements of four other witnesses, three of whom testified at the trial. Moreover, defendant had testified at the trial before the psychiatrist was called as a witness. Thus the record neither supports nor did counsel contend, either at the trial or in this court, that the written confession was relied upon by the psychiatrist in forming his opinion.
*463 On the entire record, the inescapable conclusion is that the conviction would not have been avoided even if the re-enactment and the written confession had been excluded, and, hence, the error, if one there be, was harmless (CPL 470.05, subd. 1; cf. Milton v. Wainwright, 407 U. S. 371, 372-373).
Accordingly, the order of the Appellate Division affirming the judgment of conviction should be affirmed.
Judges Jasen, Gabrielli, Jones, Waohtler, Babin and Stevens concur.
Order affirmed.