Duncan S. McNab, J.
Interesting questions of law arose during the rape trial of Leonard Mack as to whether defendant could offer laboratory reports, furnished him by the People, into evidence under the business records exception to the hearsay rule, and if not, whether defendant could call an expert medical witness to render an opinion based on reports not in evidence.
Defendant was on trial for one count of rape in the first degree and two counts of criminal possession of a weapon in the second degree. On the People’s direct case, testimony was received from a Dr. Walter Friedman, who stated that, in the course of his examination of the alleged rape victim, Sharon Freeman, he had taken smears from the vaginal area, and had forwarded these slides on to the Westchester County Sheriffs Department for analysis. Although Vincent Crispino, a senior toxicologist and pathologist employed by the Westchester County Department of Laboratories and Research testified to having examined the slides, and finding sperm thereon, the People did not choose to offer certain laboratory reports, denoted §§ 75-143, 75-158, 75-15439, 76-03112, and 76- *366 10008 into evidence. The District Attorney did, however furnish defense counsel with copies of the laboratory reports.
The evidentiary question concerning these lab reports then arose during the defense case. Defendant, as part of his defense, sought to introduce these lab reports into evidence under CPLR 4518, the business records exception to the hearsay rule. In addition, defendant sought to have his own medical expert, Dr. Wiener, render an expert opinion as to various specimens taken from Miss Freeman, based exclusively on Dr. Wiener’s interpretation of the analysis of those specimens contained in the lab reports in question. Dr. Wiener did not personally examine Miss Freeman.
The People objected to the introduction of the lab reports, claiming (1) lack of a proper foundation, (2) that the intention of CPLR 4518 was to only allow the introduction of hospital records, and (3) that CPLR 4518 applies to civil, and not, criminal cases.
This court felt constrained to grant defendant’s request to admit the reports into evidence.
Initially, the court would note that the business record rule is available in both civil and criminal cases. (See People v Sugden, 35 NY2d 453 citing therein to People v Foster, 27 NY2d 47 and People v Nisonoff, 293 NY 597.) Secondly, while the District Attorney is correct that CPLR 4518 (subd [b]) strictly applies to hospital bills, CPLR 4518 (subd [a]) provides that any writing or record, made as a memorandum or record of any act shall be admissible in evidence if the Judge finds that it was made in the regular course of business and that it was the regular course of such business to make it. Significantly, CPLR 4518 (subd [a]) also specifies that the term "business” includes a business, profession, occupation and calling of every kind. Similarly, CPLR 4518 (subd [c]) states that "all records, writings and other things referred to in sections 2306 and 2307 are admissible in evidence under this rule,” providing they are duly authenticated. These latter sections also encompass many other types of records besides hospital records. (See Richardson on Evidence [10th ed], § 298.)
In the instant case, the laboratory reports the People furnished to the defendant were certified to be true copies of the laboratory reports of the Westchester County Department of Laboratories and Research. That is, they were given to the defendant by the People as the medical report of a doctor hired by the county who had examined the various specimens *367 listed in those lab reports, i.e., Sharon Freeman’s underclothing, vaginal smears, and specimens of blood and saliva. The court would find then that the necessary foundation had been laid to introduce these reports under CPLR 4518 (subd [a]); that is, that these reports were made in the regular course of business and that it was the regular course of the Department of Laboratories’ business to make such reports. Further, the court finds that the term "business” as defined in CPLR 4518, subd [a] is of a broad nature, and can properly encompass the laboratory reports in question here. (See People v Morris, 42 AD2d 968 [court ruled that where a proper foundation had been laid, exclusion of an autopsy report was serious error]; People v Giesa, 71 Mise 2d 506 [police department complaint report admitted into evidence under business entry exception to hearsay rule]; and see annotations following CPLR 4518, subd [a], generally.) Having found that the proper foundation was laid, the fact that certain entries contained in the reports may be self-serving is no bar to its admission. (Hayes v State of New York, 50 AD2d 693.)
Moreover, the court finds that the lab reports being offered are properly authenticated records of a municipal department, and would thereby be admissible, even had no foundation been laid, under CPLR 4518 (subd [c]) and CPLR 2307 (subd [a]).
Admitting these reports into evidence clearly obviated any further problems in having Dr. Wiener refer to them as the basis for his expert opinion. However, the court would take this opportunity to note that even if the reports had not been admitted into evidence, Dr. Wiener would still have been allowed to rely upon them as the basis for his expert opinion. This conclusion is based on what the court perceives to be the clear trend away from the so-called Keough rule prohibiting an expert from basing his opinion on material not in evidence.
Prior to the enactment of the CPLR, a jury had to be presented with the facts upon which an expert witness based his opinion. (People v Keough, 276 NY 141, 145-146; see, also, People v Samuels, 302 NY 161.) However, that strict rule was subsequently modified by CPLR 4515, wherein the Legislature recognized that the jury should have broader access to a medical expert’s skill and knowledge. This provision reads: "Unless the court orders otherwise, questions calling for the opinion of an expert witness need not be hypothetical in form, and the witness may state his opinion and reasons without first specifying the data upon which it is based. Upon cross- *368 examination, he may be required to specify the data and other criteria supporting the opinion”. Moreover, CPLR 4515 has been interpreted to deal precisely with the expert medical witness, such as Dr. Wiener here, who has no personal knowledge of the facts. (See Richardson on Evidence [10th ed], § 369.)
Similarly, case law subsequent to Keough also reflects a continuing liberalization of the old rule. The first step in this evolution came in People v DiPiazza (24 NY2d 342). There, the court allowed psychiatric experts for the People to render opinions as to defendant’s sanity based, in part, upon certain hospital records not in evidence. The court was careful to note, however that these records played a comparatively small role in the process by which the People’s experts arrived at their opinion, and that the expert was thoroughly cross-examined about these tests. (People v DiPiazza, supra, p 351.)
Then, in People v Stone (35 NY2d 69) the Court of Appeals upheld the Trial Judge’s ruling admitting the expert opinion of a court-appointed psychiatrist into evidence where the psychiatrist, in addition to interviewing the defendant, also interviewed 12 other people, four of whom did not testify. In so ruling, the court in Stone stated that "the limitations of the [Keough] rule are apparent, for its rigid application discourages the professionally responsible psychiatrist from exploring sources of background information relevant and necessary to the sound medical opinion of defendant’s sanity”. The court concluded that in evaluating the worth of an expert opinion, the jury should be informed of his sources, and that the validity of his reasoning process could be effectively probed on cross-examination. (People v Stone, supra, pp 74, 76.)
Finally, the Court of Appeals’ most recent discussion of this subject is found in People v Sugden (35 NY2d 453, supra). There, our State’s highest tribunal again upheld the Trial Judge’s decision to allow a psychiatric expert for the People to render an expert opinion based, in part, on another witness’ out-of-court statement. In so doing, the court cited DiPiazza and Stone for the proposition that a psychiatrist, after rendering a legally competent opinion, could further support that opinion by reference to medically relevant, albeit hearsay, evidence. Additionally, the Sugden court (p 459) declared that "the Stone and DiPiazza cases reflect to some degree a policy which would allow an expert to base his opinion on material not in evidence, provided the data relied upon is of the kind *369 ordinarily accepted by experts in the field”. In declaring this policy, the court in Sugden commented (p 460) that "the right to confront witnesses in a criminal case is not one without narrow and cautious exceptions”, citing among other exceptions, the book entries and public records rules, which this court confronts in the case at bar.
Perhaps most significant to the instant case, the court in Sugden, while reaffirming the importance of having the expert specify what part of his opinion was based on material not in evidence, also stated in dicta (p 461): "This is not to say that a case would never arise * * * where it would be unjust to allow liberal use of out-of-court material. An example might be where the out-of-court material is more probative of 'guilt’ * * * than it is of defendant’s mental condition.”
Thus, arguendo, had the lab reports herein not been ruled admissible into evidence, the court feels that Sugden would have allowed liberal reference to the lab reports which here bear heavily on the ultimate issue of guilt or innocence, even if the medical expert had no other basis for his opinion. The court finds that the lab reports upon which Dr. Wiener is relying herein were not only accepted by experts in the field, but were themselves furnished by an expert, and subsequently turned over to the defendant by the People. Dr. Wiener could have relied upon these reports, even if they had not been admitted into evidence,* as the basis of his expert opinion, with the People having every right to inquire into the sources of his information on cross-examination. The court feels such a ruling would have been consistent with the steady erosion of the Keough rule as reflected in the DiPiazza — Stone—Sugden line of cases.
Such is the ruling of this court.

 The court would note too that even if the lab reports had not been allowed in evidence, certain of the items listed in those reports, such as the slides and brown pajamas worn by the defendant, were in evidence in any event.