*113 OPINION OF THE COURT
Bbllacosa, J.
Defendant appeals from an order of the Appellate Division, which affirmed a judgment of County Court, Nassau County, convicting her, after a jury trial, of criminally negligent homicide of her newborn infant. The dissenting Justice at the Appellate Division granted permission to appeal, and we now affirm.
The primary issue, as it has evolved, is whether CPL 60.55 (T) automatically obviates the need for a Frye hearing in this case. We must determine whether the trial court erred as a matter of law when it precluded, without a reliability assessment, reference by expert opinion witnesses to publications of others concerning profiles of a novel neonaticide "syndrome,” proposed in support of the defendant’s affirmative defense of insanity. Appellant also argues that the trial court deprived her of a fair trial by admitting a photograph of the deceased infant.
Upon giving unattended birth to a baby boy in the bathroom of a college dormitory, defendant asphyxiated the infant and secured a friend’s unwitting assistance in disposing of the body. Defendant was charged with first and second degree manslaughter.
Before the trial commenced, the People requested that the trial court conduct a Frye hearing to determine the admissibility of the defense experts’ expected testimony on neonaticide, a term used to describe a mother killing her newborn within 24 hours of birth. The People argued that defendant was required to establish the scientific reliability of neonaticide as a psychological syndrome if such evidence were to be accepted. Defense counsel specifically objected to a Frye hearing, stating that he had no intention of presenting neonaticide as a syndrome. County Court denied the People’s request for a Frye hearing, stating that it would make specific evidentiary rulings regarding the expert’s testimony as the trial progressed. The *114 court cautioned, however, that it would be unable to rule on syndrome evidence without a hearing.
On her affirmative defense of insanity, defendant presented expert testimony which tended to establish that (1) she completely denied the existence of her pregnancy, (2) such denial occurs in almost all cases in which women kill their newborn infants immediately after birth, ánd (3) in a large number of those cases the women believed that they were not pregnant. Defense experts also testified that, upon giving birth, defendant suffered from a brief reactive psychosis because she was no longer able to deny her pregnancy. The trial court permitted all this testimony but precluded defendant’s expert witnesses only from additionally describing a profile of the symptoms of women who have killed their children under similar circumstances. Defendant objected to the limitation, arguing that CPL 60.55 (1) permits a psychiatric expert to testify as to the basis of an opinion in connection with an insanity claim and restricts courts from discretely evaluating the appropriateness of the basis of an expert’s opinion.
The Appellate Division, with one Justice dissenting, affirmed defendant’s conviction of criminally negligent homicide (215 AD2d 50). The Court reasoned that "[bjefore an expert may testify about the existence of a mental disease or syndrome, the party seeking the introduction of such testimony must establish that the disease or syndrome is generally accepted in the field of psychiatry or psychology and that it would assist the jury in rendering a verdict” (id., at 52, citing People v Taylor, 75 NY2d 277, 287-292; People v Weinstein, 156 Misc 2d 34, 42-43; Frye v United States, 293 F 1013). The Court further held that the trial court’s ruling did not violate CPL 60.55 (1) because the court did not preclude defendant’s experts from referring to relevant literature or their own relevant experiences with other patients regarding neonaticide, but rather prohibited defendant’s experts only from additionally setting up a specific psychiatric profile of women who kill their newborns (215 AD2d, at 53-54). Finally, it found no error with respect to the admission of the photograph. The dissenting Justice voted to reverse the defendant’s conviction and to remit the matter for a Frye hearing and a new trial (id., at 54).
Defendant argues for reversible error and a new trial because of the trial court’s refusal to allow her psychiatric experts to explain their reliance upon out-of-court scientific evidence. Specifically, she contends that defense experts had no intention of testifying that she was suffering from neonaticide *115 syndrome, as such and in that precise terminology. Such testimony, she concedes, would be inadmissible because the neonaticide syndrome has not been classified as an illness. To the contrary, defendant’s lawyer argues, the defense experts sought to utilize the clinical experience of various doctors to support their expert opinions that defendant suffered from a brief reactive psychosis; that their proffered testimony was introduced to explain a diagnosis and not to establish a fact. Defendant asserts that she merely attempted to show that clinical studies have established patterns of conduct of young women, reflecting certain similar characteristics, who have suffered from a genuine pathological denial of their pregnancies and subsequently killed their newborns immediately after birth.
Defendant’s contentions are not persuasive in the factual and procedural construct of this case. Regardless of whether defense counsel classified its proffered evidence as an attempt to establish a "pattern,” "profile,” "theory” or "syndrome,” and regardless of whether defendant used the term "neonaticide syndrome,” the essential defense theory was an attempt to portray a pattern of behavior not generally recognized in the relevant medical context and community. No threshold evidentiary foundation whatsoever was offered that acknowledged the validity or existence of defense counsel’s postulate to warrant these experts using this kind of extrapolated material to bolster their expert opinions. Yet, defendant’s theory — at best, a novel hypothesis and the product of a refined strategy — was presented for the jury’s consideration by way of the experts’ opinions. The only point of contention is the exclusion of additional improper bolstering based on outside influences and references that we agree should be subject to a reliability hearing under such circumstances as are proffered in this case. The strategic avoidance by the defense of this very procedural safeguard is not without its own significance in this regard.
This Court has often endorsed and applied the well-recognized rule of Frye v United States (293 F 1013, supra; but see, Daubert v Merrell Dow Pharms., 509 US 579; Fed Rules Evid, rule 702). That protocol requires that expert testimony be based on a scientific principle or procedure which has been " 'sufficiently established to have gained general acceptance in the particular field in which it belongs’ ” (People v Wesley, 83 NY2d 417, 423, quoting Frye v United States, supra, at 1014). Specifically, in People v Wesley, we noted that novel scientific evidence, such as DNA evidence, requires a determination as *116 to its reliability (People v Wesley, supra, at 422). In People v Taylor (75 NY2d 277, supra), we concluded "that the relevant scientific community has generally accepted that rape is a highly traumatic event that will in many women trigger the onset of certain identifiable symptoms” (id., at 286). We, thus, held expert testimony describing rape trauma syndrome admissible when "offered to explain behavior that might appear unusual to a lay juror not ordinarily familiar with the patterns of response exhibited by rape victims” (id., at 293 [emphasis added]).
The Legislature has, to be sure, expressed a threshold of admissibility for when defendants assert the affirmative defense of insanity. CPL 60.55 (1) provides that a psychiatrist or licensed psychologist, testifying to a defendant’s mental condition at the time of an offense charged, "must be permitted to make any explanation reasonably serving to clarify his [or her] diagnosis and opinion.” This section was enacted to modify the common-law rule — otherwise known as the Keough rule (People v Keough, 276 NY 141, 145) — that limited the expression of expert foundation testimony to facts in evidence and personal observation and examination of the defendant (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.55 [1], at 147).
This Court has analyzed the effects of CPL 60.55 on this common-law restriction, specifically discussing the legislative purposes behind its enactment, which our ruling in no way undermines as the dissent contends. In People v Stone (35 NY2d 69), we considered the issue of whether a psychiatric expert may testify as to reliance on out-of-court evidence— extrajudicial statements — despite the traditional common-law limitation (id., at 74, citing People v Keough, 276 NY 141, supra). The Court stated that CPL 60.55 "represents an effort by the Legislature to strike a balance between the potentially conflicting factors [of] * * * the medical soundness and legal admissibility of a psychiatrist’s expert opinion” (People v Stone, supra, at 75). Although in Stone the Court permitted the expert testimony, importantly "the court ha[d] reasonably assured itself of a legally competent basis for the psychiatrist’s opinion” (id., at 75).
Thereafter, in People v Sugden (35 NY2d 453), .this Court confronted the issue of whether an expert opinion may be based on an out-of-court written statement of a witness who testified at trial (id., at 456). The Court stated that Stone "reflect[s] to some degree a policy which would allow an expert to base his *117 opinion on material not in evidence, provided the data relied upon is of the kind ordinarily accepted by experts in the field” (id., at 459 [emphasis added]). The Court concluded that a psychiatrist may refer to out-of-court evidence under two circumstances: when the evidence "is of a kind accepted in the profession as reliable in forming a professional opinion,” and when it "comes from a witness subject to full cross-examination on the trial” (id., at 460-461). A per se admissibility authorization would eliminate these important threshold safeguards built into the rule by our precedents.
Recently, in People v Angelo (89 NY2d 217), this Court considered whether a psychiatric expert may testify to reliance on a polygraph examination of the defendant. While CPL 60.55 was inapplicable because the defendant had not asserted an insanity defense, we observed that the exceptions to the common-law rule discussed in People v Sugden permitting an expert to base an opinion on out-of-court evidence under certain conditions, "specifically incorporate the customary admissibility test for expert scientific evidence — which looks to general acceptance of the procedures and methodology as reliable within the scientific community” {People v Angelo, supra, at 222-223 [emphasis added] [citations omitted]). That is the apt reliance which we give to our recent unanimous utterance.
Our principal controlling precedents regarding the application of CPL 60.55 (1) highlight this Court’s consistent policy that evidence offered by a psychiatric expert be of a kind established as generally accepted in the profession as reliable (People v Sugden, 35 NY2d 453, supra; People v Stone, 35 NY2d 69, supra). CPL 60.55 (1) does not overrule the reliability need for a Frye or Frye-like hearing in all instances when a party seeks to present novel scientific or psychiatric or medical evidence. The Legislature neither expressly nor impliedly enacted such a comprehensive change. Its intent to retain some reliability requirement in CPL 60.55 (1) is reflected in our controlling precedents and is further evidenced by the statute’s reasonableness component — requiring that a psychiatric expert "be permitted to make any explanation reasonably serving to clarify his [or her] diagnosis and opinion” (emphasis added).
In sum, the trial court did not err in narrowly precluding only the ultimate, bottom-line expert testimony of neonaticide syndrome — even if the precise words were going to be deftly and strategically avoided. The experts should not have been allowed to parade before the jury nontestifying experts’ publications about a theoretical profile, without a reliability founda *118 tion being satisfied at the threshold. We are satisfied that trial courts under a proper application of CPL 60.55 (1) should retain some measure of authority to examine such potentially unreliable and prejudicial evidence before automatically allowing its admission before the jury for its weight assessment.
Finally, based on our precedents, we agree with the Appellate Division that the trial court did not deprive defendant of a fair trial by admitting the photograph of the deceased infant into evidence; moreover, the argument as to the sentence is beyond our review.
Accordingly, the order of the Appellate Division should be affirmed.