Simons, J.
(dissenting). CPL 60.55 provides a narrow exception for the introduction of hearsay evidence when the defendant asserts an affirmative defense based upon mental disease or defect. In such cases any psychiatrist or psychologist who has examined the defendant and offers an opinion on defendant’s mental capacity at the time of the crime "must be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion” (CPL 60.55 [1] [emphasis added]). The exception applies whether the expert testifies for the People or the defendant. The statute was enacted to provide a broad rule of admissibility for expert testimony in the narrow circumstances it addresses (see, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.55, at 147), one that is far less stringent than the common-law reliability test.
The majority would undermine the legislative purpose by holding that before an expert can refer to various psychiatric conditions discussed in the scientific literature used to inform his or her opinion, those conditions must be generally accepted by the scientific community to a degree satisfying the test for admissibility set forth in Frye v United States (293 F 1013). However, admissibility must be determined by the context and purpose of the expert testimony, not the substance of the evidence. If the evidence is offered by an expert testifying in support of the affirmative defense, and if it reasonably serves to clarify the expert’s opinion or diagnosis, it should be admitted even if the substance of it has not attained general acceptance in the relevant scientific community. It is then for the jury to determine the weight to be accorded the expert’s opinion after hearing the basis for it. Because I believe the neonaticide evidence reasonably served to clarify the experts’ opinions in this case, I dissent.
*119 I agree with the majority that our law generally requires application of the Frye standard to determine the admissibility of an expert’s testimony regarding a novel scientific principle or procedure (see, majority opn, at 115). The Frye test, however, is a test of admissibility. It ensures that the evidence presented to the jury to establish relevant scientific facts is reliable. For example, in People v Wesley (83 NY2d 417) the People used a novel scientific test — DNA profiling — to identify the DNA in bodily fluids obtained from various items of evidence and those facts were used to establish defendant’s identity as the perpetrator. The Frye test was applied to ensure that the DNA tests were reliable means of identifying characteristics of bodily fluids. Similarly, in People v Taylor (75 NY2d 277) an expert, who had not examined the witness and was not testifying about her behavior as such, testified that there exists a rape trauma syndrome and described what it is. Those facts were then used by the People as affirmative evidence to establish the reasonableness of the rape victim’s conduct which, to the lay jury, might seem inconsistent with the behavior one might expect of a rape victim. The evidence in Taylor was offered to negate the inference that the victim had consented, and the Frye test was applied to determine whether the rape trauma syndrome evidence was reliable.
As these decisions demonstrate, the Frye test is generally applied to determine the admissibility of a novel scientific principle or procedure when the scientific evidence derived from the novel procedure or principle is itself offered as proof (see, People v Middleton, 54 NY2d 42, 49-50 [scientific evidence from bite marks on victim’s body]; People v Allweiss, 48 NY2d 40, 50 [hair found at crime scene]; People v Henson, 33 NY2d 63, 73-74 [battered child syndrome; used to establish that injuries were not accidental and were sustained at the hands of parents]; cf., People v Angelo, 89 NY2d 217 [polygraph evidence not admissible to negate the necessary mens rea element of offenses charged]; People v Leone, 25 NY2d 511 [polygraph]; People v Williams, 6 NY2d 18, cert denied 361 US 920 [theory that heroin addicts were generally not credible could not be used to challenge witness’s credibility]).
The evidence authorized by CPL 60.55 (1) is offered for a very different reason: to explain the basis for the expert’s diagnosis and opinion. The section was enacted to relax the common-law rules of admissibility when: (1) an expert who has examined the defendant; (2) offers an opinion of the defendant’s mental condition at the time of the crime; (3) in support of the *120 affirmative defense of mental disease or defect. This narrow statutory exception was thought necessary to permit the psychiatric expert to refer to and explain sources of relevant background information commonly used and necessary in forming a medical judgment. The statute was designed to permit a psychiatrist to give the basis for his or her opinion because preventing the expert from doing so vastly limits the value of psychiatric evidence (see, Matter of Lee v County Ct., 27 NY2d 432, 441; see also, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 60.55, at 147; Comment to Model Penal Code § 4.07 [4]). It was enacted to overcome the constricting common-law rule set forth in People v Keough (276 NY 141) and to permit experts to tell the jury that the opinion it is asked to evaluate is based on matters that experts in the field usually rely upon, even though some of the items considered are not in evidence. The statute accommodates two potentially conflicting concerns — the medical soundness of the expert’s testimony and legal admissibility of expert opinion— and strikes a balance between them (People v Stone, 35 NY2d 69, 75). It permits otherwise inadmissible evidence to be received but explicitly provides that the expert may be cross-examined as to "any matter bearing on his competency or credibility or the validity of his diagnosis or opinion” (CPL 60.55 [1]).
The purpose of expert opinion evidence is to inform the jury on scientific matters about which they have no knowledge. In the specific context of the affirmative defense, the experts are trying to explain to lay jurors how they could determine retrospectively what defendant’s mental state or condition was at the time of the crime when they did not observe her condition then. Mental disease is a highly complex area in which diagnosis depends heavily on subjective judgments. The Legislature has recognized that when a defendant asserts an affirmative defense based on mental disease it is important for the jury to be fully informed about the basis for the psychiatrist’s opinion so that it may evaluate it. If the expert’s diagnosis and opinion are based on theories that are of questionable validity (and therefore inadmissible under the Frye standard), the opposing party may challenge the medical soundness of the theory informing the expert’s opinion, and "[t]he jury may then take the opinion for what they think it is worth” (People v Stone, supra, 35 NY2d, at 76).
Thus, in People v Stone (supra) and People v Sugden (35 NY2d 453) — our only controlling precedents in this context— *121 psychiatrists who had examined defendants were permitted to refer to extrajudicial hearsay statements that would ordinarily have been inadmissible because of their inherent unreliability. The evidence was admissible under the circumstances because it was information upon which the experts relied and was presented solely to explain the basis for their opinions that the defendants were legally sane when they committed their crimes.* Similarly, in this case defendant’s experts were not trying to establish that, the scientific community generally recognizes a neonaticide syndrome. They were attempting to testify that some women suffered from similar symptoms and that they had used that information when making a diagnosis, along with the patient’s history, their examination findings and interviews with those who could shed light on defendant’s condition. That this neonaticide information may háve been unreliable or the doctors foolish to rely upon it was a matter of weight not admissibility.
To be sure, the court may, in its discretion, foreclose the use of such testimony because the witness’ reliance is unreasonable under the circumstances. It cannot, however, bar the testimony as a matter of law because it does not meet the reliability standard of Frye. The statutory provision speaks of "reasonableness”, nothing more, and manifestly, it is reasonable for a psychiatrist to consider scientific theories which have yet to attain general acceptance.
After examining defendant, the experts diagnosed her as having suffered a reactive psychosis at the time of the homicide, and they offered their opinions that at that time she was unable to appreciate the consequences and wrongful nature of her actions. The experts established the necessary foundation for their opinions by detailing their personal examinations of defendant and their investigation of her conduct and emotionality over a period of time (see, People v Stone, supra, 35 NY2d, at 73, 76). They should also have been permitted to explain how that evidence assisted them in concluding that defendant suffered a psychotic break at the time of the homicide by reference to articles they had studied in the medical literature which discussed other psychiatrists’ experience with women whose circumstances and conduct were similar. The experts testified that it is common in their field to draw on colleagues’ *122 experiences, and the materials on which they relied were facially reasonable because they were written by legitimate practitioners and published in recognized medical journals. The evidence was thus "data * * * of the kind ordinarily accepted by experts in the field” (People v Sugden, supra, 35 NY2d, at 459) and under provisions of the statute the psychiatrists "must be permitted” to present it in reasonable explanation of their opinion. The Court’s failure to allow them to do so here violated CPL 60.55 (1). Defendant’s experts were precluded from fully explaining the basis for their opinions and the jury was precluded from fully evaluating the opinions. Accordingly, defendant’s presentation of her affirmative defense was compromised and reversal is required.
Chief Judge Kaye and Judges Titone, Smith, Levine and Ciparick concur with Judge Bellacosa; Judge Simons dissents and votes to reverse in a separate opinion.
Order affirmed.

 The majority’s reliance on People v Angelo (88 NY2d 217, supra) is not in point. Defendant in that case did not assert an affirmative defense of insanity and therefore was not entitled to the liberal rule of admissibility CPL 60.55 (1) permits.