■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM O'DANIEL, Appellant. [963 NYS2d 737]—

Egan Jr., J. Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered March 28, 2011, upon a verdict convicting defendant of the crimes of rape in the first degree (two counts), attempted rape in the first degree, sexual abuse in the first degree (two counts) and endangering the welfare of a child (two counts).

In June 2009, defendant was indicted and charged with rape in the first degree (two counts), attempted rape in the first degree, sexual abuse in the first degree (two counts) and

endangering the welfare of a child.[1] The charges stemmed from a series of sexual acts—occurring over the course of three evenings in 2005—that were perpetrated by defendant against the then five-year-old daughter (hereinafter victim A) of his live-in girlfriend. These acts took place in the bedroom that victim A shared with her then three-year-old sister (hereinafter victim B), the latter of whom was defendant's biological daughter, and occurred during what victim A described as "snuggle time."[2]

Victim A had been warned by defendant "not to tell anyone" but, following the third incident, she "crept out" of her bedroom and told her mother, who was in the living room, that defendant had touched her. The mother confronted defendant, who denied that anything inappropriate had transpired, and the mother believed him. Eventually, the mother moved out of the residence, leaving her daughters behind with defendant. Shortly thereafter, victim A went to live with her biological father and, in January 2009, following a good touch/bad touch presentation in school, victim A told her stepmother and father what defendant had done to her. Victim A's father promptly notified law enforcement, and the underlying charges ensued.

When defendant was arraigned in July 2009, he appeared with attorney Keith Bruno, who was standing in for defendant's retained counsel, James Martineau Jr. As Bruno, the Assistant District Attorney and County Court (Ryan, J.) were discussing defendant's release status, defendant slumped to the floor and was transported to a local emergency room for evaluation. While en route to the hospital and/or awaiting treatment, defendant made various statements to the State Trooper who accompanied him, including expressing a desire to kill himself and questioning "how they could have physical evidence against him because [victim A] ha[d] everything intact."

Following successive adjournments during the spring and summer of 2010, two of which were occasioned by Martineau's ongoing health problems, County Court (McGill, J.) suggested that Martineau seek out a second chair in advance of the rescheduled October 2010 trial date. Bruno agreed to serve in that capacity and, following Martineau's hospitalization, also agreed to handle defendant's trial. At defendant's request, Bruno twice sought further adjournment of the trial date.

---

**1.** The indictment subsequently was amended with respect to the period of time during which the acts alleged therein took place.

**2.** The sole count in the indictment pertaining to victim B charged defendant with endangering the welfare of a child, which was premised upon the allegation that defendant engaged in sexual conduct with victim A while in the presence of victim B.

County Court denied the respective motions and, following a jury trial, defendant was convicted as charged and sentenced to an aggregate prison term of $19^{1}/_{2}$ years in prison followed by a period of postrelease supervision. Defendant now appeals.

We affirm. Initially, we reject defendant's assertion that he was denied his statutory right to counsel (*see* CPL 170.10 [3]) at the October 5, 2010 pretrial conference. On that date, Bruno appeared on defendant's behalf and, after advising County Court of the underlying arrangement with Martineau, indicated that he had reviewed defendant's "entire file" and discussed "at length"—with both defendant and defendant's father—the terms of the People's pending offer, including the "potential consequences of going to trial" and defendant's sentencing exposure, "as well as [the] proposed terms and conditions of [the] probation" period associated therewith. Under such circumstances, defendant's claim that he lacked representation at the pretrial conference and, thus, was forced to proceed pro se and evaluate the plea offer without the assistance of counsel is patently meritless.

Defendant's related claims—that he was denied the right to counsel of his choosing and that County Court both impermissibly interfered with an existing attorney-client relationship and abused its discretion in denying defendant's request for further adjournments—are equally unpersuasive. To be sure, "[c]riminal defendants have a constitutional right to be represented by counsel of their own choosing and must be accorded a reasonable opportunity to select and retain such counsel" (*People v Sapienza*, 75 AD3d 768, 770 [2010] [internal quotation marks and citation omitted]). However, "this right is qualified in the sense that a defendant may not employ such right as a means to delay judicial proceedings" (*People v Arroyave*, 49 NY2d 264, 271 [1980]; *see People v Brown*, 101 AD3d 1627, 1628 [2012]).

Bruno, who was no stranger to defendant, entered the case at Martineau's request and, ultimately, assumed the role of trial counsel due to Martineau's ongoing health issues. Although defendant now contends that this turn of events effectively denied him the right to be represented by counsel of his choosing, noticeably absent from the record is any indication that defendant was unwilling to proceed to trial with Bruno as counsel or, more to the point, that he sought further adjournment of the trial date for the express purpose of retaining another attorney. Rather, defendant, who was out on bail pending trial, instructed Bruno to seek two further adjournments in order to give Bruno more time to prepare. Bruno, however, voiced no concerns as to his readiness to proceed. To the contrary, Bruno indicated—as

noted previously—that he had reviewed defendant's "entire file," met with defendant "quite frequently" and was "confident" that, if the trial proceeded as scheduled, he would be "prepared and ready to go forward." Under these circumstances, we cannot say that County Court either interfered with an existing attorney-client relationship (*compare People v Jackson*, 216 AD2d 323, 323-324 [1995], *lv denied* 86 NY2d 843 [1995]), denied defendant a reasonable opportunity to retain counsel of his choosing (*compare People v Branham*, 59 AD3d 244, 245 [2009]; *People v Mack*, 39 AD3d 882, 883-886 [2007]) or abused its discretion in denying defendant's request for further adjournments (*see People v Mao-Sheng Lin*, 50 AD3d 1251, 1253 [2008], *lv denied* 10 NY3d 961 [2008]; *People v Dashnaw*, 37 AD3d 860, 862-863 [2007], *lv denied* 8 NY3d 945 [2007]).

Nor do we find merit to defendant's claim that he was denied the effective assistance of counsel. Bruno made cogent opening and closing statements, effectively cross-examined the People's witnesses, made appropriate objections and motions throughout the course of the trial and presented a viable—albeit ultimately unsuccessful—defense. Under these circumstances, we are satisfied that defendant received meaningful representation (*see People v Jenkins*, 90 AD3d 1326, 1330 [2011], *lv denied* 18 NY3d 958 [2012]; *People v Underdue*, 89 AD3d 1132, 1134 [2011], *lv denied* 19 NY3d 969 [2012]; *People v Phelan*, 82 AD3d 1279, 1282-1283 [2011], *lv denied* 17 NY3d 799 [2011]).

As for defendant's assertion that the underlying verdict is against the weight of the evidence, we disagree. Victim A testified at length (and in great detail) regarding the acts committed by defendant—including where the crimes occurred, what she was wearing, what defendant was wearing, how she, victim B and defendant were positioned relative to each other in the bed in which the offending conduct took place and the precise manner in which defendant touched her—and described her unsuccessful attempts to escape defendant's advances. Additionally, the People adduced medical evidence of internal scarring that was consistent with victim A's recitation of the acts committed by defendant.[3] Although cross-examination of victim A revealed some inconsistencies regarding precisely what time of year the underlying crimes took place and defendant presented evidence from which the jury reasonably could have concluded that such crimes did not occur within the period of time specified in the

---

3. Contrary to defendant's assertion, the record makes clear that the People's expert witness did not base her medical opinion upon a hearsay statement made by victim A's father (*compare People v Sugden*, 35 NY2d 453, 460-461 [1974]).

amended indictment, the jury plainly chose to credit victim A's testimony—despite an attempt by defendant's mother to portray the child as a liar—and we discern no basis upon which to disturb the jury's determination in this regard. Defendant's remaining contentions, including his assertion that the sentence imposed was harsh and excessive, have been examined and found to be lacking in merit.[4]

Peters, P.J., Spain and Garry, JJ., concur. Ordered that the judgment is affirmed.

---

4. Despite the suggestion made at oral argument, we discern no illegality in defendant's sentence.